(S1 App. Div. 617.)

HINSDALE v. NEW YORK, N. H. & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. NEGLIGENT DEATH—MEASURE OF DAMAGES—EVIDENCE—PRICE OF ANNUITY.
    Under Code Civ. Proc. §§ 1903, 1904, providing that damages for negligent death may be such sum as the jury deem a fair compensation for pecuniary injuries, resulting from decedent's death, to the surviving husband or wife and next of kin, evidence of the cost of an annuity, based on deceased's expectation of life, sufficient to produce a yearly income equal to his annual income at the time of his death, was inadmissible.

2. SAME—AGE OF DECEDENT'S FATHER.
    On an assessment of damages for negligent death, evidence of the length of life of deceased's father was inadmissible.
    O'Brien and Hatch, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Christine H. Hinsdale, as executrix of the last will and testament of Edward C. Hinsdale, deceased, against the New York, New Haven & Hartford Railroad Company and another. Decedent left a widow, an adopted daughter, a mother, and two sisters. From a judgment for plaintiff, defendant New York Central & Hudson River Railroad Company appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Austen G. Fox, for appellant.
Charles Blandy, for respondent.

INGRAHAM, J. The plaintiff's testator was killed in a railroad accident caused by a collision between the trains of the defendants' railroad corporations, and his executrix brought this action to recover for the damages sustained thereby to his next of kin. The deceased had been employed by the Morton Trust Company and its predecessor in business, Morton, Bliss & Co., for about 32 years, and had arisen from an office boy to the position which he held at the time of his death. The defendant the New York Central & Hudson River Railroad Company admitted that the decedent's death was caused by the negligence of its employés, and that it was liable to the plaintiff for the pecuniary loss sustained by the plaintiff and the next of kin of the deceased for the death of the deceased, and that the deceased died on January 8, 1902. The complaint was then dismissed as against the New York, New Haven & Hartford Railroad Company. The only question upon the trial was as to the amount of damage that the plaintiff was entitled to recover.

The deceased left him surviving a widow, 45 years of age, and a mother, 78 years of age. The jury found a verdict for the plaintiff for. $40,000, and this appeal is based upon exceptions to rulings on evidence, and exceptions to the charge and refusals to charge. The plaintiff proved that the deceased was in receipt of $2,200 a year from the Morton Trust Company; that he was a notary public, and that the fees from that source amounted to $150 a year; that he was

¶ 2. See Death, vol. 15, Cent. Dig. § 84.

treasurer of a corporation from which he received a salary of $1,000 a year; that he had acted for a real estate broker by the name of Anderson, and at times procured loans on property for Anderson's customers; that when he procured a loan Anderson divided the commissions. Anderson testified that between July 1, 1894, and January 1, 1902, he had paid to the plaintiff's testator, on account of this business, between fourteen and fifteen thousand dollars. There was also evidence that, some time in the year 1898, the plaintiff's testator and one Barrington commenced to purchase postage stamps of what are known as the "Columbian Issue" and the "Omaha Issue"; that the business ceased, all of the stamps having been sold in 1901; and it was claimed that the plaintiff's testator's profit in this venture amounted to about $1,200 for the three years that he was engaged in it. Based upon this evidence, the plaintiff claims to have established that the plaintiff's testator was in receipt of an income of $5,750 a year.

The evidence as to this stamp transaction is that it had ended in the middle of December before the testator's death, because the supply of stamps had been exhausted, and there is nothing to show that he would have continued to receive anything from this stamp transaction had his life not been terminated by this accident, this being more in the nature of an independent speculation than a regular business.

The evidence as to his income from a division of commissions with the broker is quite indefinite. The broker with whom it is claimed he divided the commissions testified that the deceased would come into his office nearly every day about lunch time; that he was a broker to make loans; that, when he had not anybody to loan the money to his customers, he would apply to the deceased, and the deceased had several times procured the loans from different parties; that this arrangement between the witness and the deceased had been going on since the 1st of July, 1894, and continued at the time of his death; that he and the deceased had divided between twenty-eight and thirty thousand dollars from the 1st of July, 1894, to the 1st of January, 1902. Upon this statement of the earnings of the plaintiff's testator, an actuary was called as an expert, and testified that the expectation of the life of a person 47 years of age was $19^{50}/_{100}$ years. The witness was then asked: "Can you tell the court and jury what it would cost to purchase an annuity that would produce the sum of $3,350 annually, based upon an age of 47 years—I will say, according to the Northampton Tables of Mortality?" This was objected to by the defendant, the objection was overruled, to which the defendant excepted, and the witness answered, "$36,126.40"; and the same question was asked upon the basis of an income of $3,750, to which the witness answered, "$40,440"; and upon an income of $5,750, to which the witness answered, "$62,008."

This evidence could only have been admissible upon the theory that what the plaintiff was entitled to recover was the sum that would produce the income that the deceased had been earning at the time of his death for a period that for a man of his age he could be expected to live. Such evidence would be very misleading to the jury, if they were not justified in adopting such a rule in determining

the amount of the verdict; and nothing is clearer than that such is not the basis upon which the jury are to determine the amount to which the plaintiff is entitled. The amount of such a recovery is regulated by section 1904 of the Code of Civil Procedure, which provides that the damages awarded "to the plaintiff may be such a sum as the jury * * * upon a trial, * * * deems to be a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons for whose benefit the action is brought." And section 1903 provides that the damages recovered are exclusively for the benefit of the decedent's husband or wife and next of kin. While the amount of the salary or earnings of a decedent and the probable duration of his life are competent evidence to enable the jury to estimate the probable loss caused to the widow or next of kin of the decedent by his death, it is quite clear that a verdict for the total amount that the decedent would earn during the period that his life should continue would be grossly excessive. The widow was 45 years of age; the mother, the next of kin of the decedent, was 78 years of age. The question for the jury to determine was, not what sum would be sufficient to procure for decedent an annuity equal to the amount of his income for the number of years that he would probably have lived had his life not been cut short by this accident; not the amount of money that he would probably have earned for the period of his probable duration of life; but the pecuniary loss that his widow and mother had sustained in consequence of his death. The uncertain element that must necessarily enter into any computation of such a pecuniary loss has been recognized by the courts in determining the nature of the evidence that is admissible in actions of this character. The statute imposes upon the jury the burden of determining that question, and, to assist them in the performance of that duty, evidence of the amount that the decedent earned, his habits, the relationship of those dependent upon him, and the view that he has taken of his obligations to those dependent upon him as evidenced by the contributions that he has made for their support and comfort, are proper elements for the jury to consider in determining what they have lost by his death. The language of the statute, however, precludes an attempt to measure this loss upon a mathematical calculation, and we do not think that evidence of the cost of an annuity should be admitted, as it is calculated to distract the attention of the jury from the real duty that is imposed upon them by the statute, and that is, to fix what they deem a fair and just compensation for the pecuniary injuries resulting from the decedent's death. The amount that would be required to procure for the deceased a certain annuity for his life, free from all the contingencies of the loss of employment or earning power by sickness or other misfortune, has no relation to the benefit that his wife or mother would have received had his life been continued, and there is no evidence that he had ever contributed to his mother's support.

The court was requested to charge that the jury must not award the amount which, if invested with reasonable certainty, would produce a sum equal to the net earnings or receipts of the deceased, which was refused, and to which refusal the defendant excepted. The

jury had before them, as competent evidence, the amount of the gross sum for which an annuity equal to the earnings of the deceased could be purchased. That was based, not upon the life of the beneficiary, but upon the life of the deceased; and, with that evidence admitted as competent to be considered in the determination of the case, an instruction to the jury that they were not to find a verdict based upon that computation was refused. We are constrained to hold that these two exceptions present error which requires us to reverse the judgment.

We also think that the testimony of the age of the father of the deceased was immaterial. The jury should not have been allowed to consider that, because the father had lived to be 72 years of age, liis son would live so long. We think that the admission of that evidence was allowing an element to be considered by the jury which is, even in cases of this character, too speculative.

It follows that the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. O'BRIEN and HATCH, JJ., dissent.