sary for the preservation of our wild animals, fish, and birds that even the allowance of possession during the month of December is coupled with the requirement that the presumption is that the birds so possessed were unlawfully taken, and at the end of such month it has provided that the privilege to hold in cold storage and under bond depends upon affirmative proof that the necessary bond has been given. To weaken by judicial construction these carefully considered and appropriate provisions of the statute would be to invite violations of this salutary law. We are to interpret the laws, not make them.

It therefore follows that the judgment and order appealed from should be affirmed, with costs to the respondent. All concur.

---

JAMES McCREERY REALTY CORP. v. EQUITABLE NAT. BANK OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. APPEAL—EFFECT IN LOWER COURT OF TRANSFER OF CAUSE—NEW TRIAL.
    The right to move for a new trial being statutory, the removal of a judgment to the United States Supreme Court by writ of error and its affirmance by that court is no bar to a motion for a new trial for newly discovered evidence.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 2196.]

2. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION OF COURT.
    It is within a trial court's discretion to grant a new trial for newly discovered evidence.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, New Trial, §§ 10, 201.]

    Ingraham and Clarke, JJ., dissenting.

Appeal from Appellate Term.

Action by the James McCreery Realty Corporation against the Equitable National Bank of New York. From a determination of the Appellate Term (104 N. Y. Supp. 959), affirming an order of the New York City Court (102 N. Y. Supp. 975) granting plaintiff's motion for a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Louis Marshall, for appellant.
Henry F. Wolff, for respondent.

SCOTT, J. The appellant appeals from a determination of the Appellate Term, affirming an order of the City Court of the city of New York, which granted a new trial on account of newly discovered evidence. The action was brought to recover an installment of rent, amounting to $750, claimed to be due for the month of January, 1905, under a written lease whereby the demised premises were let for a term of five years from May 1, 1902. The defendant entered into possession under the lease in May or June, 1902, and occupied the premises and paid rent therefor until February, 1904, when a receiver was appointed, who continued to occupy the premises and pay rent therefor

for some time after his appointment. It is unnecessary to recite in detail the history of the case, or the nature of the newly discovered evidence which the plaintiff seeks an opportunity to present, since that ground has been exhaustively covered by the prevailing opinion of Mr. Justice Giegerich in the Appellate Term. The same learned justice has satisfactorily demonstrated that the right to move for a new trial in this state is, and has been at least since 1832, a right conferred by statute, and hence that the removal of the judgment to the Supreme Court of the United States by writ of error and its affirmance by that court constituted no bar to the plaintiff's present motion. Fuller v. U. S., 182 U. S. 562, 21 Sup. Ct. 871, 45 L. Ed. 1230.

The right of the City Court to entertain the motion being thus determined, the question whether or not the motion should be granted became one for the exercise of the court's discretion. Assuming, but without deciding, that this court has power to review the discretionary order of the City Court, affirmed by the Appellate Term, I am very clearly of the opinion that we should not in the present case exercise that power. I am not unmindful of the apparent weakness of the plaintiff's case for a new trial, and much doubt whether, as an original proposition, I should have been disposed to grant the motion. But that point is one upon which reasonable minds may well differ, and it certainly cannot be said that the City Court abused its discretion in deciding to grant the application. Under these circumstances, I do not think that we should overrule both the City Court and the Appellate Term.

The order should be affirmed, with $10 costs and disbursements.

PATTERSON, C. J., and LAUGHLIN, J., concur.

INGRAHAM, J. (dissenting). This action was commenced on January 4, 1905, in the City Court, and was brought to recover a monthly installment of rent of real property for the month of January, 1905—the complaint alleging that on or about the 1st of May, 1902, the plaintiff and the defendant entered into a lease in writing whereby the plaintiff leased and demised to the defendant a portion of the premises, 803 Broadway, in the city of New York, for a term of five years, to commence on the 1st day of May, 1902, at the yearly rental of $9,000, payable in equal monthly installments on the 1st day of each month in advance; that the defendant entered into possession and enjoyment of the premises demised in said lease on the 1st day of May, 1902; and that the monthly installment of rent under said lease for the month of January, 1905, is due and unpaid. The answer denies that the defendant executed the lease, or that it entered into possession of the premises, and alleges as a separate defense that the defendant was a national bank, organized under and existing by virtue of the laws of the United States, and was organized as such, and authorized by the Comptroller of the Currency to commence the business of banking on or about the 2d day of June, 1902; that the alleged lease set forth in the complaint was made, executed, and entered into by the plaintiff with certain persons purporting to act on behalf of the defendant before the date of its organization, and before the

defendant had any corporate existence, and before it had been authorized by the Comptroller of the Currency to commence the business of banking; that at the time when the said lease was executed and delivered the defendant had no corporate existence, nor were there any officers or directors of the defendant corporation, nor any other person or persons then or at any time having power or authority to make the lease set forth in the complaint; that the alleged lease set forth in the complaint was null and void and of no effect from the date thereof. Subsequently the complaint was amended so as to allege that the lease was executed and delivered on June 19, 1902. The case came on for trial before a justice of the City Court without a jury, who, on February 24, 1905, filed his decision, in which he found that the certificate of organization of the defendant was filed with the Comptroller of the Currency on the 19th of May, 1902; that its incorporators met and organized on the 27th day of May, 1902, electing a president and one John Carraway cashier; that the certificate of the Comptroller of the Currency authorizing the defendant to commence the business of banking was issued on the 2d day of June, 1902; that on the 27th day of May, 1902, the plaintiff and the defendant entered into a lease in writing, dated the 1st day of May, 1902, whereby the plaintiff leased and demised to the defendant a portion of the premises, No. 803 Broadway, in the city of New York; that the defendant entered into possession and enjoyment of the demised premises under said lease on or about the 10th day of May, 1902, and continued in the actual occupation thereof until the month of February, 1904; that the plaintiff executed said lease prior to the 27th day of May, 1902, and delivered the same to the defendant for execution; and that on the 27th day of May, 1902, the defendant by its president and cashier executed said lease and delivered the same to the defendant corporation on said day, and the said lease was thereupon accepted and retained by the plaintiff; that the defendant paid the rent of the said premises for the month of May, 1902, and for each and every month thereafter to January, 1904, in advance, as required by the terms of said lease. As conclusions of law the court found that the defendant was not at the time of the execution and delivery of the lease set forth in the complaint authorized by the Comptroller of the Currency to commence the business of banking; that the defendant corporation, not being authorized to commence business, had no authority to execute and deliver the lease set forth in the complaint on the 27th day of May, 1902, or to legally bind the defendant corporation thereby; that the act of the officers in executing and delivering said lease on said day was null and void; and judgment was directed for the defendant. Judgment was duly entered upon this decision, from which the plaintiff appealed to the Appellate Term, where the judgment was affirmed on the 1st of June, 1905. Application having been made to appeal to this court, which was refused, the plaintiff obtained a writ of error from the Supreme Court of the United States, where the judgment was subsequently affirmed on the 19th day of November, 1906. 203 U. S. 584, 27 Sup. Ct. 782, 51 L. Ed. 328.

The sole issue presented in this case was as to the date of the execution of the lease by the defendant. That issue was presented by the

pleadings, and that issue was tried and determined upon these pleadings in favor of the defendant. After the case was submitted to the Supreme Court of the United States for its decision, and on the 23d day of October, 1906, the plaintiff obtained an order to show cause why there should not be a new trial upon the ground of newly discovered evidence. This motion came on for ·argument after the decision of the Supreme Court of the United States had been announced, and resulted in the order appealed from, which was entered on the 28th day of December, 1906, granting the motion. This order was affirmed by the Appellate Term, who allowed an appeal to this court.

·Before discussing the main question presented upon this appeal, we should determine how far this court, upon an appeal from the Appellate Term, should review orders of the City Court which are of the class known as discretionary orders. Appeals from the City Court are regulated by the Code of Civil Procedure. Section 3189 provides that an appeal to the Supreme Court may also be taken from an interlocutory judgment rendered, or an order made at chambers, or at a Special Term or Trial Term of the City Court, or from an order made by a judge thereof out of court, in a case where an appeal may be taken to the Appellate Division of the Supreme Court from an interlocutory judgment rendered or an order made in like manner as prescribed in sections 1347, 1348, and 1349 of the Code; that upon such an appeal the Supreme Court shall have full power to review any exercise of discretion by the court or judge below. Section 4 of article 6 of the Constitution provides that:

"Appeals from inferior and local courts, now heard in the Court of Common Pleas for the city and county of New York and the Superior Court of Buffalo, shall be heard in the Supreme Court in such manner and by such justice or justices as the Appellate Division in the respective departments which include New York and Buffalo shall direct, unless otherwise provided by the Legislature."

Under this authority the Appellate Division has created a term of the Supreme Court to be held by three justices, and has directed that appeals from the City Court be held at said term. Section 3191 of the Code provides that an appeal to the Appellate Division of the Supreme Court in the First Judicial Department may be taken from a judgment or order entered upon the determination of an appeal taken as prescribed in sections 3188 and 3189 of the Code. An appeal from the City Court is to the Supreme Court, and upon such an appeal the Supreme Court shall have power to review any exercise of discretion by the court or judge below. Whether that appeal is heard by the Appellate Term of the Supreme Court, or the Appellate Division, full power is given to the Supreme Court to review a discretion exercised by the City Court, and that power is necessarily lodged in the Supreme Court, whether the appeal is heard at the term created by the Appellate Division for that purpose or by the Appellate Division itself; and on an appeal from the Appellate Term, exercising this power to review the discretion of the City Court, this court necessarily has the same power to review the determination of the Appellate Term as if the appeal had been directly taken from the City Court to this court. The right to review the discretion of the City Court being vested in the

Supreme Court, it is the duty of that court to review the discretion of
the City Court; and it seems to me, therefore, that the question of
the proper exercise of judicial discretion in granting an order for a
new trial is properly before us for review.

Bearing in mind, therefore, that the sole question presented upon
these pleadings for determination in the City Court was as to the date
of the delivery and execution of this lease, the question is then pre-
sented as to whether the City Court should have granted a new trial
upon the ground of newly discovered evidence. The evidence which
is thus said to have been newly discovered is that of the following
named witnesses: One John W. Wooten, who was formerly one of
the defendant's attorneys, was called on behalf of the defendant to tes-
tify as to the date, execution, and delivery of the lease, and was ex-
amined and cross-examined. He testified that this lease was executed
on May 27, 1902, that he was present when it was executed, and that
it was delivered to a Mr. Easter, representing the plaintiff, on that
day. There was presented on this application an affidavit, verified by
Wooten on the 22d day of October, 1906, over 18 months after the
trial, that he handed these papers to Easter, plaintiff's employé, after
June 2, 1902, and that the signatures of the plaintiff and the cashier of
the defendant were affixed by both parties after June 2, 1902. This
person is now an inmate of the state's prison under a judgment con-
victing him of a crime. The second witness that it is alleged the
plaintiff has since discovered was one Carraway, who was the cashier
of the defendant. The alleged lease was signed by Carraway as
cashier, and was acknowledged by him on the 19th day of June, 1902.
The plaintiff, therefore, had full knowledge that Carraway, having
been cashier of the defendant and having executed the lease on its be-
half, could give material evidence as to the date of the execution of
the lease and its delivery. There is no allegation that the plaintiff or
its attorney made any effort to procure the testimony of Carraway
upon the trial, or to ascertain from him the date of the execution and
delivery of this lease. In an affidavit upon which this motion was
made it appears that in September, 1906, one Gandy, whose connection
with the case is not disclosed, called upon the plaintiff's attorney and
stated that he had been informed by Carraway that the said lease was
signed and delivered after June 2d and not before. Just why this dis-
closure was made, or its object, is not disclosed; but the plaintiff's at-
torney annexes to his affidavit a telegram, dated September 10, 1906,
to Carraway in Mississippi, asking him when he intended coming to
New York, and "whether you can carry out Mr. Arthur Gandy's sug-
gestion regarding bank case." Just what that suggestion was is not
disclosed. An answer to that telegram is also annexed to the affidavit
which states:

"Can come to New York at any time desired. Mr. A. O. Gandy of Hotel
Endicott represents me."

The plaintiff's attorney then telegraphed to Carraway that Gandy
and Cockrell had informed the plaintiff's attorney that Carraway did
not sign the lease until after June 2d, and requested Carraway to tel-
egraph:

"Whether those facts and whether you are willing to make deposition ac-cordingly. Not necessary for you to come to New York unless you desire to. Must however know to-day what the fact is in regard to date of your signa-ture and your presence in the city."

In answer, Carraway telegraphed:

"Gandy and Cockrell both know the facts in matter referred to. I am writ-ing to make deposition setting forth the truth."

And these telegrams are the only communications from Carraway to plaintiff's attorney as to what the facts were that he was willing to testify to. There is, therefore, here not only no affidavit of Carraway as to what was the truth, or as to what he would testify to, but no direct statement from Carraway to the plaintiff's attorney as to whether his testimony would be at all material upon a new trial. We have, then, an affidavit of Gandy, who also carefully refrained from any statement as to his relations to the case, to the plaintiff, or as to what induced him to interfere. He states that at the time of the trial Carraway was absent from the state of New York and in the state of Mississippi, but that in June or July, 1905, he had a conversation with Carraway, in the course of which Carraway said that the lease was signed by the president of the defendant and by himself as cashier after June 2, 1902, and not before; that in the month of July, 1906, he had a conversation with Carraway, stating that he had received a communication from one Cunningham, an employé of the plaintiff, requesting an interview, but that he (Carraway) did not desire to see Cunningham, as he was afraid that he might be served with a subpoena to appear as a witness in some proceeding connected with this action, and that he did not desire to give testimony, inasmuch as his testimony would be adverse to the defendant, and hence adverse to his interest as a stock-holder of the defendant, repeating his statement that the lease was not signed until after June 2, 1902. Gandy then says that on or about the 1st of September, 1906, he communicated these facts to the plaintiff's attorney, and subsequently received a letter from Carraway, in which Carraway stated that he would give his deposition; that on September 17, 1906, he received a telegram from Carraway stating that he signed the lease after June 2d and would make an affidavit to that effect; that since September 17, 1906, Carraway had refused to furnish an affidavit for use upon the motion, for the reason that he was unwilling to volunteer testimony in this case adverse to his own interest as a stockholder of the defendant and the interest of his friends similarly situated; and this is the only evidence we have as to what Carraway would testify to. There is not the slightest evidence that Carraway would be willing to testify on a new trial of the action to any fact that would be of assistance to the plaintiff, any more than he would be willing to make an affidavit for use on the motion. There is also the affidavit of one O'Neale, who says that a few days before June 2, 1902, he entered the employment of the defendant as assistant cashier, and for some time thereafter acted as teller; that after the defendant had commenced business one Easter, who was in the employ of the plaintiff, called at the bank on several different occasions and inquired about this lease; that he spoke to Carraway about it, who

told him the lease would be ready in a few days. And it was to obtain the testimony of these three witnesses that this motion was made.

Assuming that the court had power to grant a motion for a new trial on the ground of newly discovered evidence after the defeated party had exhausted his remedy by an appeal to the highest court of the state or nation, such an application should only be granted in a clear case, and where it clearly appears that the testimony which the witnesses will give upon the new trial would have a material influence on the result, that the plaintiff's attorney could not in the exercise of ordinary diligence have obtained this testimony upon the trial, and that after the trial the plaintiff and its attorney exercised due diligence in their endeavors to procure the testimony of the witnesses upon whose evidence they rely for the granting of the application. It is quite clear that the practice should not be encouraged of such an application, made after the right to appeal has been exhausted and the judgment reviewed by the highest courts in the country, when the plaintiff's attorney first makes an investigation as to what additional testimony he could have procured upon the trial. But little attention, I think, should be paid to this affidavit of Wooten, who testified on the trial that the lease was delivered upon the 27th of May, and who is an inmate of the state's prison, and now comes forward with an affidavit that his testimony was false, and that he is willing now to testify that the lease was delivered subsequent to June 2d. No judgment could stand, if witnesses who had testified to material facts should be allowed afterwards upon affidavits that they had before testified to a falsehood, but would now be willing to testify differently, could be received as a reason for granting a new trial. As to the testimony of Carraway and O'Neale, they were both officers of the defendants. Carraway had signed the lease. The plaintiff's attorney had notice long before the trial that Carraway would give material testimony upon this question, and by the exercise of ordinary diligence could have ascertained who were the other officers of the bank to whom he could apply for information. He made no effort to obtain the evidence of Carraway, and, so far as appears, no effort to ascertain what other officers or employés of the bank would have knowledge of the fact which it was material for him to prove. He brought his case on for trial without making any effort to obtain this testimony, or even to ascertain what the officers or employés of the defendant who had to do with the making of the lease would testify to. After the trial, when defeated, he accepted the result, and instead of then endeavoring to ascertain from the persons who, from the facts within his knowledge, would necessarily have knowledge as to the date of the delivery of the lease, took an appeal and prosecuted that appeal to the Supreme Court of the United States; and it was only as the result of some undisclosed arrangement between Gandy and the plaintiff's attorney that the motion for a new trial was made, without statement from Carraway to the court or to the plaintiff's attorney that he could testify to any fact which would be of the slightest benefit to the plaintiff.

The principles upon which these new trials upon the ground of newly discovered evidence are granted are well settled. They are

stated in the cases of Biddescomb v. Cameron, 58 App. Div. 42, 68 N. Y. Supp. 568, and Simonowitz v. Schwartz, 73 App. Div. 489, 77 N. Y. Supp. 209, and need not be here repeated. I do not think the plaintiff has brought itself within the rule which requires a party to an action to act with diligence to procure the testimony necessary for the successful prosecution or defense of the action, and in the absence of such diligence, if defeated, he cannot apply to the court upon the ground that he subsequently has discovered testimony which would have been material if it had been produced upon the trial. The plaintiff knew before the trial that Carraway could give material evidence as to the date of the execution and delivery of this lease. He made no effort to procure his testimony, or to ascertain what he would testify to; and it is too late for him, after the affirmance of the judgment by the Supreme Court of the United States, to make investigation as to other evidence as a basis of a new trial. In addition, attention should be paid to the very suspicious character of this "newly discovered" evidence. It is perhaps unnecessary to say more than that the good faith of these witnesses and the credibility of their testimony is subject to grave suspicion. People, who had no recollection in 1905 of the delivery of a lease in 1902, in 1906 suddenly acquire recollection which, if testified to, might help the plaintiff, and the witnesses, who positively testified to a date in 1905, recollected in 1906 that their testimony was wrong, and a witness who refused to make an affidavit, or who refused to state to the plaintiff's attorney what the fact was, is relied upon as being able to furnish testimony as to the fact. All of this is too suspicious and uncertain, it seems to me, to justify a new trial in a case that was brought on for trial by the defeated party, relying upon the testimony that he then had to prove the one fact which was at issue, and, when defeated, exhausting his right to appeal before taking any steps to discover whether there was other evidence which, if he had produced it, would have been material upon his side of the controversy. I have not reverted to the affidavit of Easter, which was read in reply to the defendant's affidavit in opposition to the motion, who was not one of the witnesses upon whom the plaintiff relied in making the motion; but his revival of recollection in consequence of a conversation with O'Neale is quite insufficient to bolster up a motion that was made without attempting to rely upon his testimony.

I do not think that, under the circumstances as they appeared before the City Court, this application should have been granted, and I therefore think that the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

CLARKE, J., concurs.