MARY WETHERS, as Administratrix, etc., of ROBERT WETHERS, Deceased, Plaintiff, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Supreme Court, New York Special Term, April, 1923.

Negligence — death case — new trial — testimony by widow as to contributions made her by deceased — newly-discovered evidence tending to show her statements were false — when new trial granted.

In an action brought by an administratrix for the death of her husband caused by negligence, only the pecuniary damages resulting from the decedent's death are recoverable under section 132 of the Decedent Estate Law, and evidence as to the amount that the deceased earned, his habits, the relationship of those dependent upon him as evidenced by his contributions for their support and comfort are proper elements for the consideration of the jury in determining what the next of kin of the deceased lost by his death.

The deceased for about three months prior to the accident in which he lost his life was employed by a firm which had a contract with the defendant to unload cars at one of defendant's freight yards in the city of New York. The plaintiff testified upon her direct examination that about seven years before the death of her husband on February 20, 1922, he, for the reason that he could obtain better wages, came to the city of New York from Baltimore, Md., where plaintiff was living; that he contributed to her support and that of their two daughters both still under age, from twenty to twenty-five dollars a week. Upon cross-examination she testified that the money was sent to her by registered mail. From a summary of defendant's payroll, read into the record by consent, it appeared that exclusive of the sum of nineteen dollars and twenty-four cents awarded to the deceased by defendant for " back time " his average earnings for 1920 did not exceed twenty-seven dollars per week; that they did not exceed twenty-five dollars per week for 1921, and that from January 1, 1922, until his death they did not exceed eighteen dollars per week. The plaintiff further testified that during the period of her husband's residence in New York he visited her in Baltimore about every two or three weeks, each time leaving money with her; that when he last visited her on Labor Day, 1921, he gave her thirty dollars and seventy-five cents and between that date and the date of his death he sent her money as he had always done by registered mail. Witnesses sworn for the defendant testified that on October 6, 1916, the deceased was married to another woman with whom he lived in New York city until her death about two months prior to the accident in which the deceased lost his life, and that a child was born of said marriage.

Upon motion by defendant for a new trial on the ground of newly-discovered evidence a letter carrier made affidavit that his present route for ten years last past had included the plaintiff's residence in Baltimore; that he was the only carrier who had delivered mail at that address and that during all of such period of time he had not delivered to plaintiff any registered mail. Postal employees, who keep in the station of the Baltimore post office, which serves the territory including plaintiff's residence, the official records of all registered mail delivered from or passing through said station office, made affidavit that upon their examination of the records of all such registered mail back to July 1, 1918, they found no record of the handling of a single piece of registered mail for plaintiff. *Held,* that defendant's motion for a new trial on the ground of newly-discovered evidence based upon said affidavits, will be granted.

If the newly-discovered evidence, that of the postal employees, were in the case it would, if credited by the jury on a new trial, change the result, at least to the extent of destroying any foundation for the verdict of $10,000 rendered in favor of plaintiff.

The new evidence was discovered after the trial had begun; the postal employees were in Maryland not subject to subpœna and the time between the adjournment of the trial on Friday afternoon and the following Monday morning was not sufficient to procure an order for the taking of their depositions outside of the state. *Held,* that in the circumstances defendant could not be charged with negligence in not having procured the newly-discovered evidence upon the trial.

MOTION by the defendant for a new trial on the ground of newly-discovered evidence.

*David M. Fink (Moses Feltenstein* and *Frank Jacquin,* of counsel), for plaintiff.

*Alex S. Lyman (Jacob Aronson,* of counsel), for defendant.

GIEGERICH, J. The defendant moves for a new trial on the ground of newly-discovered evidence. The action is to recover damages for the death of the plaintiff's husband, claimed to have been sustained in consequence of the defendant's alleged negligence. The jury found a verdict in favor of the plaintiff for ten thousand dollars. In addition to the issues relating to the accident the question as to the amount of damages which the widow and next of kin had in fact sustained by reason of the death of the intestate was actively litigated upon the trial. The plaintiff, who is the widow of the intestate, testified that about seven years before her husband's death he came on to New York city from Baltimore, where she was living, because he could obtain better wages in New York city, and that he contributed to the support of the plaintiff and their two daughters, now sixteen and fourteen years of age, respectively, from twenty dollars to twenty-five dollars a week. On cross-examination the plaintiff was asked: " Q. You say he gave you $20 to $25 per week? A. Yes, sir. Q. How did you get the money? A. Sent it to me by mail; registered letter. Q. Was it a post office money order? A.

Registered letter; he sent it to me and had it registered.   The Court: Q. Registered letter?   A. Yes." She further testified that throughout the period of her husband's residence in New York city he visited her in Baltimore about every two or three weeks and on these occasions left money with her; that he gave her thirty dollars and seventy-five cents when he last visited her, which she stated was on Labor Day, 1921, and that between the last-mentioned date and February 20, 1922, the date of the death of her husband, he sent her the money, as he had always done, by inclosing it in an envelope and forwarded the same by registered mail.   It appears from the testimony of witnesses called by the defendant that on October 6, 1916, the deceased married one Jennie Banks, with whom he thereafter lived in New York city until the time of her death, some two months prior to the time of the accident in which the plaintiff's intestate lost his life, and that a child was born of the second marriage.   The affidavits submitted in support of the motion are those of the letter carrier whose route includes the residence of the plaintiff in Baltimore; of the foreman and of another employee of the Clifton station of the Baltimore post office, which station serves the territory which included the plaintiff's residence.   The affidavit of the letter carrier is to the effect that his route includes the plaintiff's residence and has included it for the past ten years; that he is acquainted with the plaintiff and has known her for a number of years; that he is the only carrier who delivers mail at that address and is the only one who has delivered such mail for the past ten years, and that during all of that period of time he has not delivered to the plaintiff any registered mail whatsoever.   The affidavits of the foreman and another employee of the Clifton station post office are to the effect that they keep in that station official records of all registered mail delivered therefrom or passing through that office; that they have examined the records of all such registered mail back to July 1, 1918, and that they find no record of the handling of a single piece of registered mail for the plaintiff.   The plaintiff in one of the answering affidavits submitted in opposition to the motion states " that a few times during my husband's absence he would send me money by way of registered letters.   It is my recollection that at least four to five letters were sent to me that way during the last seven years."   She also states that when she originally retained her attorney she showed to a clerk in his office some of these registered letters and was told that they were of no importance and that she shortly thereafter destroyed them.   It should be observed that the identity of that clerk was not disclosed, nor is his affidavit presented to corroborate that statement.   The

plaintiff claims that the purported newly-discovered evidence fails to meet the requirements of the rule governing an application of this character. In *McCreery R. Corpn.* v. *Equitable Nat. Bank,* 54 Misc. Rep. 508; affd., 123 App. Div. 358, I had occasion, in delivering the prevailing opinion of the Appellate Term, to review in considerable detail the rules applicable to motions for a new trial upon the ground of newly-discovered evidence and I called attention to the fact that upon such motions it is possible to cite many authorities on either side of the proposition, but that each case must be disposed of on its own facts, and that the cardinal question to be determined is whether or not the ends of justice will be promoted by a new trial. It was held in *Frohlich* v. *Zeltzer,* 185 App. Div. 103, that in order to obtain a new trial on the ground of newly-discovered evidence it must ordinarily be shown that the evidence was not and could not have been discovered in the exercise of reasonable diligence before the trial; that it is material and not merely cumulative or of an impeaching character in the sense of affecting credibility only as distinguished from having probative force by showing a different state of facts, and that on a new trial it would probably change the result; that, however, only ordinary diligence with respect to discovering the evidence before trial is required and the court possesses inherent power to grant such a motion where the ends of justice require it, even though a technical compliance with said requirements be not shown, and that the probative force of newly-discovered evidence is only considered in determining whether it is probable that the result will be different on a new trial. In *Mevius* v. *Tiffin Products, Inc., No. 2,* 198 App. Div. 812, a motion for a new trial on the ground of newly-discovered evidence was granted where the new evidence went to the question of the extent of the injury sustained by the plaintiff, who had recovered a verdict for the negligence of the defendant. It is said in *Markert* v. *Long Island R. R. Co.,* 175 App. Div. 467, that the strict rule with respect to cumulative evidence which was formerly applied on applications for a new trial no longer obtains, and that a new trial may be granted if the evidence, though partly cumulative, is of such a character that it is likely to produce a different result on a new trial. The defendant's counsel claims that the newly-discovered evidence is material upon the issues as to the alleged contribution made by the intestate to the plaintiff. The plaintiff's counsel, on the other hand, contends that it does not make the slightest particle of difference whether the deceased ever contributed a single dollar to the plaintiff and her children, because, as claimed, under the law she could invoke that right

at any time; that it was a substantial right and that it was compensatable in the jury's verdict. The same argument was advanced by the plaintiff's counsel upon the trial, but the learned trial justice held adversely to this contention, and such ruling is amply sustained by the authorities. The rule of damages accruing to the next of kin of a person whose death is caused through the negligence of a third party is definitely set out in section 132 of the Decedent Estate Law (added by Laws of 1920, chap. 919), and, so far as applicable, reads as follows: " The damages awarded to the plaintiff may be such a sum as the jury upon a writ of inquiry, or upon a trial, or, where issues of fact are tried without a jury, the court or the referee, deems to be a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought." The provisions of section 1904 of the Code of Civil Procedure have been re-enacted in such section 132 of the Decedent Estate Law without change. It will be observed that the damages recoverable are the pecuniary damages resulting from the decedent's death, and it would seem that for the purpose of determining that question evidence of the amount that the deceased earned, his habits, the relationship of those dependent upon him as evidenced by contributions that he has made for their support and comfort are proper elements for the jury to consider in determining what they have lost by his death. *Hinsdale* v. *New York, N. H. & H. R. R. Co.*, 81 App. Div. 617; *Orendorf* v. *New York Central & H. R. R. R. Co.*, 119 id. 638; *Spreen* v. *Erie R. R. Co.*, 219 N. Y. 533. As was said in the case last cited, at page 535: " The amount customarily received by a wife from her deceased husband plainly has some bearing on the question what constitutes a fair and just compensation for the pecuniary injuries resulting from the decedent's death to the person or persons for whom the action is brought, the wife being one of those persons. (Code Civ. Proc. secs. 1903, 1904.)" It would appear from the evidence that the deceased, at the time of his death and for about three months previous to the accident, was employed by a firm which had a contract with the defendant to unload cars of hay at the defendant's freight yard at Eleventh avenue and Thirty-third street, in the borough of Manhattan, city of New York. The same work had previously been performed by the defendant for whom the decedent also worked from at least the month of January, 1920, to December, 1921, when the firm in question took over such work. On consent of the plaintiff's counsel the defendant's counsel read into the record a summary of the payrolls, showing the amounts paid to the decedent for work performed from the second half of

January, 1920, to the time of his death. It would appear from such payrolls that, exclusive of the sum of nineteen dollars and twenty-four cents awarded to him by the defendant for "back time," the average earnings of the deceased for the year 1920 did not exceed twenty-seven dollars per week; that they did not exceed twenty-five dollars per week for the year 1921, and that from January 1, 1922, to the time of his death they did not exceed eighteen dollars per week. If the deceased earned no more than is disclosed by such payrolls there would appear to be considerable force in the defendant's contention that the earnings of the decedent during the period in question were wholly inadequate to support, in separate households, the plaintiff and her two children, as well as the wife and child of the second marriage. These circumstances, considered in the light of the new evidence of the postal employees that they found no record of any registered mail for the plaintiff, would justify a finding by the jury that the testimony of the plaintiff that she received remittances from her husband by registered mail of twenty to twenty-five dollars per week throughout the period of seven years, except on those occasions, two or three weeks or so apart, when he visited her in Baltimore, and that between Labor Day, 1921, and the time of his death, almost six months, he had made no visit to Baltimore, and that during that entire period she received his remittances by mail was improbable. The plaintiff insists that the newly-discovered evidence relates only to the manner of receiving the alleged remittances and does not dispute the fact that they were actually made. I do not so regard the new evidence. If the new evidence is credited by the jury they might, in view of all the circumstances, conclude that the decedent made no contributions to the plaintiff, at least to the extent claimed by her, and thus probably influence the amount of their verdict if they reach the conclusion that the plaintiff is entitled to recover. In other words, if the new evidence were in the case it would on a new trial, in the event of credence being given thereto by the jury, probably change the result at least to the extent of destroying any foundation for the rendition of so substantial a verdict as was rendered in favor of the plaintiff. The plaintiff's counsel concedes that the new evidence was discovered after the trial had begun, but he urges that it could have been obtained during the trial and before it was finished in the recess thereof from the adjournment on Friday afternoon until Monday morning. The papers, however, satisfy me that the defendant could not in that brief interval have sent an investigator to Baltimore, interviewed the different postal authorities and have a search made through years of official records. It should be borne in mind that even if

the new evidence had been discovered the postal employees were in Maryland and could not be subpœnaed for appearance upon the trial and that there was not sufficient time within which to procure an order for the taking of their depositions outside of this state. Under these circumstances the defendant cannot fairly be charged with negligence in not having procured the newly-discovered evidence upon the trial. As the defendant appears to have met all the requirements for the granting of a new trial on the ground of newly-discovered evidence the motion should be granted. Settle order on notice.

Ordered accordingly.