Charles Lambiase, J.
Plaintiff’s deceased, a resident of the Town of Irondequoit, New York, on the 12th day of May, 1959, was a commercial passenger on an airplane owned and operated by defendant Capital Airlines. As snch passenger he had a ticket to convey him from Rochester, New York, to Atlanta, Georgia, on flight Number 983 on that day and to return from Atlanta to Rochester, New York, on May 16, 1959. Bn route from Rochester to Atlanta the plane, on that day and at or about 3:29 p.m., put down at Kanawha Airport at Charleston, West Virginia, in the course of which landing the airplane crashed, burned, and deceased was killed.
This action, as set forth in plaintiff’s second amended complaint, has been brought by the administratrix above named pursuant to section 5474 of the West Virginia Code of 1955, entitled “Action for Wrongful Death” which, at all times herein mentioned, read as follows: ‘ ‘ Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter. No action, however, shall be maintained by the personal representative of one who, not an infant, after injury, has compromised for such injury and accepted satisfaction therefor previous to his death. Any right of action which may hereafter accrue by reason of such injury done to the person of another shall survive the death of the wrongdoer, and may be enforced against the executor or administrator, either by reviving against such personal representative a suit which may have been brought against the wrongdoer himself in his lifetime, or by bringing on an original suit against his personal representative after his death, whether or not the death of the wrongdoer occurred before or after the death of the injured party.” (1863, c. 98, § 1; Code 1868, c. 103, § 5; Code 1923, c. 103, § 5; 1931, c. 20.)
*196 More particularly, it is alleged in said second amended complaint (par. 12th) that: ‘ ‘ while the said aircraft was landing on a runway known as Runway 32 in the State of West Virginia, and while the aircraft was rolling out the landing, and while said William H. Riley was a passenger thereon, the said aircraft did leave its proper course of travel upon paved Runway 32 and did commence to move sideways in a right direction and did proceed in this right sideways direction through a sodded area in a northwest direction from the intersection of Runways 14/32 and 5/32 at said airport to the brink of a thirty-two (32) degree slope which was rimmed by a two foot embankment; the right landing gear of the said aircraft struck the said embankment turning the aircraft backward over the slope while the momentum carried the aircraft over the brink and down the thirty-two (32) degree slope tail first and the said aircraft came to rest at the foot of the slope which was approximately ninety-five (95) feet below airport elevation; length of slope from brink to bottom was approximately two hundred fifty (250) feet.”
It is further alleged in said second amended complaint (par. 14th) that: “The said defendant, its agents, servants and employees were negligent in that they failed to properly operate and control the said aircraft during the landing in that they failed to exercise the proper safety precautions and care to avoid the accident; in that the crew failed to handle themselves in a proper manner and to heed the orders of the captain which would have avoided the crash during the dangerous emergency situation; in that defendant supplied said William H. Riley with an unsafe safety belt buckle; in that defendant failed to instruct said William H. Riley in the release mechanism of said safety belt buckle; in that defendant’s aircraft and equipment thereof were defective and not in proper working order; in that defendant failed to properly inspect the said. aircraft; and in that defendant, its agents, servants and employees failed to take proper care and safety precautions to avoid harming the said William H. Riley.”
Also alleged therein (par. 17th) is the following: “ That the said William H. Riley did not compromise for such injury, nor did he accept satisfaction thereof previous to his death.”
The answer to the second amended complaint admits that the accident out of which the cause of action alleged arose occurred in the State of West Virginia and affirmatively alleges that section 5474 of the West Virginia Code of 1955 was in effect at the time setting it forth verbatim, and alleges further that also in existence was section 5475 [6] of said code entitled “Party Plaintiff in Such Action; Damages; Distribution; *197 Limitation ” reading as follows: “ Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate, left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars: Provided, however, if the plaintiff in such action shall prove by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or distributees of such deceased person in an amount exceeding the sum of ten thousand dollars the jury may give such damages as shall equal such financial or pecuniary loss, not exceeding twenty thousand dollars as the total of all damages recoverable in such action, and the amount so recovered shall not be subject to any debts or liabilities of the deceased. Every such action shall be commenced within two years after the death of such deceased person. (1863, c. 98, § 2; Code 1868, c. 103, § 6; 1882, c. 105, § 6; Code 1923, c. 103, § 6; 1955, c. 1.) ”
Also pleaded therein (par. 6th) is the following: ‘1 That pursuant to the foregoing provisions of the West Virginia Law and Statutes, if plaintiff is entitled to recover in this action, the amount of such recovery is limited as provided in said laws and statutes of West Virginia.”
The amended complaint served herein alleged two causes of action in favor of plaintiff and against the defendant pursuant to article 5 of the Decedent Estate Law of the State of New York as follows: It alleged a first cause of action that defendant negligently supplied decedent with a defective safety seat belt and failed to instruct him how to use it; that as a result decedent could not extricate himself from the airplane and died in the flames. It also asked damages for conscious pain and suffering of deceased endured by him before his death. In the second numbered cause of action plaintiff alleged that defendant was negligent in that its equipment for bringing the airplane to a halt on landing was defective; that the defect occurred in New York, Pennsylvania, and the District of Columbia as well as in West Virginia; that defendant failed to inspect the aircraft and to find the defect in said States and District. It, too, asked damages for conscious pain and suffering of deceased endured by him before his death. It also contained a third numbered cause of action in which plaintiff alleged defendant’s negligence as set forth in the first and second causes of action and alleged section 5474 of the West Virginia Code of 1955, as the basis for her right of action against defendant for damages for wrongful *198 death of deceased. In her fourth cause of action plaintiff alleged that defendant broke its contract to carry plaintiff’s decedent safely with resultant damage to decedent, apparently relying upon section 116 of article 4 of the Decedent Estate Law of the State of New York which provides that in case of death a cause of action in contract survives to one’s legal representative.
By a motion made to dismiss the affirmative defense set forth in paragraphs, fourth, fifth, sixth and seventh in the answer to the amended complaint, and in said answer made applicable to all of the causes of action — viz., that of the limitation of the amount of damages recoverable contained in the West Virginia statute, and that alleging that at the time of the accident alleged in the complaint the law of the State of West Virginia did not permit an action for damages by the executor or administrator of the deceased person for personal injuries and conscious pain and suffering of said deceased person before death — Special Term held the first and second causes of action as pleaded to be legally insufficient; it denied the motion to dismiss and held sufficient the affirmative defense based upon section 5475 of the West Virginia Code providing for a limitation on the amount of damages recoverable; and decided that the fourth cause of action was legally insufficient.
Upon appeal to the Appellate Division (13 A D 2d 889) the Appellate Division, Fourth Department, modified the Special Term to the extent of striking the affirmative defense to the third cause of action, citing Kilberg v. Northeast Airlines (9 N Y 2d 34). In its memorandum the Appellate Division states at page 890: “In our opinion Special Term correctly decided, and plaintiff now so concedes, that the fourth cause of action and so much of the first and second causes as sought recovery for wrongful death under the New York statutes were legally insufficient. In the light, however, of certain pronouncements in the Kilberg case (supra) and the unsettled state of the law in this area (cf. Grant v. McAuliffe, 41 Cal. 2d 859; Survival of Actions, 10 Stan. L. Bev., pp. 205-252) we conclude that the legal sufficiency of so much of the first and second causes as seek recovery for conscious pain and suffering and the affirmative defense thereto shnuld not be passed upon at this time. Such determination should await the trial or if defendant is so advised it may raise the question by appropriate motion.” As thus modified Special Term was affirmed. Thus the pleaded defense of the provision of the West Virginia statute limiting monetary recovery herein to the amount in said statute set forth has been determined adversely to defendant.
*199 In the Kilberg ease the court declined to apply the law of the place of the tort as respects the issue of the quantum of the recovery in a death action arising out of an airplane crash where the decedent had been a New York resident and his relationship with the defendant airline had originated in this State. (See, also, Pearson v. Northeast Airlines, 199 F. Supp. 539, motion to strike prejudgment interest den. 201 F. Supp. 45, judgment for the administratrix revd. and remanded by panel of U. S. Court of Appeals, 2d Cir., 307 F. 2d 131.) On rehearing en banc, said United States Court of Appeals (309 F. 2d 553) held that the New York court was not required to apply the $15,000 limitation of liability for wrongful death under the Massachusetts statute, and that the running of interest on the judgment should be determined by the Massachusetts law. It affirmed the judgment of the trial court as reduced by modification of award for interest. Application for writ of certiorari to the United States Court of Appeals was denied by the Supreme Court of the United States. (372 U. S. 912.)
A person or corporation operating airplanes for transportation of passengers is a common carrier. The liability imposed upon such a person or corporation is that applying to common carriers generally. The parties have agreed that the duty owed is the duty of ordinary care, reasonable care, or the care which a reasonably prudent person should exercise commensurate with existing circumstances and with the danger to be avoided.
It is plaintiff’s contention that this disaster was caused by the negligence of the defendant as alleged in its second amended complaint. Elaborating thereon, she alleges that involved in said negligence was excessive speed, improper control, and lack of co-ordination among the crew combined with confusion, misapprehension, and panic in the cockpit area. She contends that her case does not require the application of the doctrine of res ipso loquitur except in the aspect of the alleged malfunctioning of the braking equipment of the aircraft, as to which link in the chain of causal circumstances she submits that she is entitled to the application of said doctrine so as to place upon the defendant the burden of explaining the occurrence.
On the other hand, it is maintained by the defendant that, as alleged in its answer to the second amended complaint, the accident out of which the cause of action arose, and including that phase of it involving the failure of the plane to stop within the confines of the airport, was not caused by any negligence of the defendant. It submits that the plane, a Lockheed Constellation, known as an L-049, when it approached Charleston, *200 West Virginia, was cleared by the Kanawha airport control tower for an instrument landing system (IL8) straight-in approach to Runway 23 to circle and to land on Runway 32; that the instrument landing system was to get a safe method of descent to an altitude at which the operator of the plane could circle the airport safely and land on the runway for which he had received clearance; that when it reached minimum altitude, the captain elected to abandon the approach because of lack of visibility, immediately informing the tower thereof; that almost immediately after abandoning the approach the plane broke out of the clouds and the airport could be seen, at which time the plane was over Runway 23; that the captain called the tower and stated that he now had the field in sight, and that the tower called back and said they were still cleared to land on Runway 32; that the captain called back to the tower and said that he would make a left-hand turn around; that the captain then took over the operation of the plane; that all required cheek lists were accomplished; that final approach was then made and touchdown accomplished; that the runway was wet and shiny; that after the touchdown, the captain applied the brakes and noticed no appreciable braking action that could be felt or seen; that when this lack of braking action was determined, the captain called for a ground loop; that the four throttles were momentarily advanced by error, the command having been for the advancement of throttle four; that the captain immediately pulled back throttles one, two and three and pushed throttle four up to full power; that thereafter the airplane began a left-hand turn in a sideways skid down the runway, and when at about the intersection of Runway 32 with Runway 23, the plane left the runway and continued to turn in a sideways motion until it had turned about ISO1 degrees; that the plane continued its sideways motion, the main landing gear striking the erosion bank at the end of1 the airfield; that the captain then opened all four throttles in an attempt to give thrust in the opposite direction to arrest the travel of the plane; and that the plane slipped over the bank, tail first, and came to rest at the bottom of the embankment.
It is contended by defendant that the hydraulic systems in the plane were functioning properly, and that despite this fact and the repeated applications of the brakes and of every effort of the pilot to accomplish the deceleration and stopping of the plane, there was no appreciable deceleration during the roll out following landing and no stopping of the plane before the disaster. The explanation for the failure to decelerate and to stop *201 within the confines of the airport, defendant contends, lies in the phenomenon of aquaplaning which took place at the time of the occurrence due to the wet condition of the runway. Aquaplaning comes about and came about in this instance, it says, as follows: ‘1 At low speeds the tire has time to push the water on the runway out of its path. Actually the tire can push the water ahead of it and to the side. In this way there is contact between the tire — the rubber portion or footprint part of the tire — and the surface so that adhesion between the tire and the surface is possible. As we increase speed along the runway with the tire, because of the inertia of the water and the fact that it takes time to move a particle of water, some water at this higher speed begins to penetrate beneath or between the tire and the surface. There is not time for the tire to move it entirely out of the way. At this slightly increased speed we now have a certain amount of water under the tire, and there is less of the tire or a smaller footprint now where there is contact between the tire and the ground. Further increase in speed results in more and more penetration of the water under the tire until there is a speed reached at which there is complete penetration of the water under the tire from the front to the back. So that in this condition the tire is completely supported on a film of water and no longer touching the surface of the runway. To go back to the low speed again, under low speed conditions we have a lot of area of contact between the tire and the surface, and there is a chance to develop adhesion forces and braking friction. As we increase speed there is less and less area of contact between the tire and the surface, and we thus can develop less and less braking friction until finally we reach the condition called full aquaplaning where the tire is now supported by a film of water and is no longer touching the surface, and the friction forces we can develop are extremely small.” (Richard H. Sawyer, for defendant; S. M. 275-276.) Defendant submits further that this phenomenon of aquaplaning was not known to pilots at the time of this occurrence, and that it was then being studied by the National Aeronautics and Space Administration.
Plaintiff has submitted proposed findings of fact and conclusions of law which we have marked as “found” or “refused” as indicated thereon, a copy of the same being attached hereto and being made a part hereof as though herein set forth at length. We set forth particularly the following proposed findings of fact and our action in connection therewith:
*202 Proposed finding of fact 9:
That following such abandonment the pilot increased the aircraft’s speed to 145 knots and increased the altitude to approximately 1000 feet and turned on the downwind leg of the approach pattern.
(Refused solely because of the speed stated therein.)
Proposed finding of faict 12:
That at the time of the second clearance the aircraft was maintaining an above-normal speed for the approach pattern.
(Refused)
Proposed finding of fact 13:
That such above-normal speed and altitude were contributing causes of the accident.
(Refused)
Proposed finding of fact 15:
On turning onto the final approach to the runway, approximately 1% miles from the threshold of Runway 32 the air speed of the aircraft was approximately 145 knots.
(Refused)
Proposed finding of faict 20:
That the failure to land the aircraft more close to the threshold of Runway 32 was a contributing cause of the accident.
(Refused)
Proposed finding of fact 21:
That the speed at which the aircraft finally approached the runway, under the circumstances then appertaining, was a contributing cause of the accident. (Refused)
The foregoing have all been refused because in our opinion the record does not support such findings. Proposed findings 29 and 30 have been refused because they constitute a summary and recapitulation and refer to findings some of which we have refused.
We have found5 as submitted the following proposed findings submitted by plaintiff;:
22. That in passing along or over the runway, the said aircraft had insufficient ground contact to permit effective braking until a point 3,450 feet from the threshhold of Runway 32.
23. That the lack of effective braking in the first 3,450 feet of the runway was a contributing cause of the accident.
24. That while on or over the runway Captain Ohm called to First Officer Spoth to raise the wing flaps, which command Spoth did not hear and which order went unexecuted.
25. That the failure to raise wing flaps was a contributing cause of the accident. ;
26. That at a point!in Runway 32, approximately 250 feet from the intersection of Runway 23, Captain Ohm called Plight Engineer Howanski for “ full throttle on #4 engine ”.
27. That Plight Engineer Howanski responded to said order by applying power to all four engines.
28. That the misexecution of the said order for “full throttle on #4 engine” was a contributing cause of the accident.
*203 We find that the facts contained in the foregoing proposed findings of fact 22 through 28 constitute negligence on the part of the defendant proximately causing or contributing as a proximate cause to the occurrence and to the death of decedent resulting therefrom.
We turn our attention now to the question of the application of the doctrine of res ipso loquitur in the aspects of this case involving the failure of the brakes to decelerate the plane and to stop it within the confines of the airport, for it is only in this area of proof that plaintiff says that she is entitled to the application of this doctrine. (Plaintiff’s brief, p. 6.) This matter of res ipso being procedural or evidentiary, the law of the forum applies and we, therefore, turn to our New York State courts for its definition, applicability, and effect. (Kilberg v. Northeast Airlines, 9 N Y 2d 34, 41, citing Franklin Sugar Refining Co. v. Lipowicz, 247 N. Y. 465, 468; Russell v. Societe Anonyme, 268 N. Y. 173, 181. See, also, Citrola v. Eastern Airlines, 264 F. 2d 815, 817.)
In Whitcher v. Board of Educ. (233 App. Div. 184-185) the court said: “ ‘ The doctrine of res ipso loquitur, although it provides a substitute for direct proof of negligence where plaintiff is unable to point out the specific act of negligence which caused his injury, is a rule of necessity to be invoked only when, under the circumstances involved, direct evidence is absent and not readily available. * # * Hence the presumption or inference arising from the doctrine cannot be availed of, or is overcome, where plaintiff has full knowledge and testifies as to the specific act of negligence which is the cause of the injury complained of.’ (45 C. J. 1206; Plumb v. Richmond Light & R. R. Co., 233 N. Y. 285.) ” And it has been said that: “ In the absence ofevidence by plaintiff tending in some degree to explain the cause of this accident, which in the natural course of events might not be likely to occur without negligence, defendant, having control * * * would be in the best position to go forward with proof tending to rebut an inference of negligence and to show that the occurrence was without its fault. In such an event, the rule res ipso loquitur would apply. (Volkmar v. Manhattan Ry. Co., 134 N. Y. 418; Hogan v. Manhattan Ry. Co., 149 N. Y. 23; Wolf v. American Tract Soc., 164 N. Y. 30; Griffen v. Manice, 166 N. Y. 188; Robinson v. Consolidated Gas Co., 194 N. Y. 37; Plumb v. Richmond L. & P. Co., 233 N. Y. 285; Slater v. Barnes, 241 N. Y. 284; Sandler v. Garrison, 249 N. Y. 236.) This is the theory adopted in the second Whitcher case (236 App. Div. 293) and we think that it is correct.” (Bressler v. New York R. T. Corp., 270 N. Y. 409, 413.) Here the plaintiff *204 did not rely on the inference arising from the doctrine of res ipso loquitur. Her evidence was not presented on that theory. On the contrary, she pleaded and introduced evidence to establish the specific acts of negligence which she alleged caused the crash of the airplane with the resultant death of decedent. Under such circumstances the case having been thus pleaded and tried, it does not lend itself to the doctrine of res ipso loquitur. (Holtfoth v. Rochester Gen. Hosp., 304 N. Y. 27, 31; Bressler v. New York R. T. Corp., supra; Whitcher v. Board of Educ., supra.)
We cannot agree with defendant’s contention that plaintiff has failed to prove facts from which we, sitting without a jury and as fact finder, can find any actionable negligence on the part of the defendant. We are of the opinion that the record presents a question of fact as to whether under its obligation to plaintiff’s deceased the evidence establishes actionable negligence on the part of defendant proximately causing or contributing as a proximate cause to the crash and conflagration with resultant death of decedent. In the light of our discussion, we have concluded that defendant was negligent, and that such negligence proximately caused or contributed as a proximate cause to this unfortunate occurrence and to the death of decedent and without any negligence on the part of the latter proximately contributing thereto.
Ordinarily, in the orderly consideration of this case, we would now pass to the question of damages. However, we deem it advisable to mention two proposed conclusions of law submitted by plaintiff subsequently to the submission of her original proposed findings of fact and conclusions of law. By a proposed conclusion of law plaintiff has requested us to conclude “ That plaintiff’s complaint states a cause of action under Article 5 of the Decedent Estate Law of the State of New York.” (Conclusion of Law 6, dated May 1, 1963.) She bases her conclusion upon Babcock v. Jackson (12 N Y 2d 473, decided May 9, 1963) in which the court has adopted for tort cases the “ center of gravity” or “grouping of contacts” doctrine previously adopted in conflict of law cases involving contracts. (See Auten v. Auten, 308 N. "X¡. 155.) In our opinion we need not consider the effect of the Babcock case herein, and a complete answer to that request is that the second amended complaint upon which this case was tried does not plead any such cause of action nor one for conscious pain and suffering. This is consistent with her position taken before the Appellate Division (13 A D 2d 889) which position is quoted in the following language from the memorandum of said court: “In our opinion Special Term *205 correctly decided, and plaintiff now so concedes, that the fourth cause of action and so much of the first and second causes as sought recovery for wrongful death under the New York statutes were legally insufficient.” (Emphasis supplied; see, also, previous quote hereinbefore contained.)
The second amended complaint was served following the decision of the Appellate Division affecting the amended complaint. It would seem that in so doing plaintiff elected to withdraw all other causes of action which she had previously alleged in her amended complaint, the amended complaint having been superseded by the second amended complaint. We may say also in passing that there is no evidence of conscious pain and suffering in the record. We have, therefore, refused the proposed conclusion of law.
By another proposed conclusion of law we have been asked to determine that plaintiff is entitled to interest from May 12, 1959, date of death, upon any amount found to be due here, that is prejudgment interest, pursuant to the provisions of section 132 of the Decedent Estate Law of the State of New York. We have denied that request. Only by finding sanction therefor under said section which is contained in article 5 of our Decedent Estate Law could we make such a conclusion, for that section provides, among other things, that ‘1 When final judgment for the plaintiff is rendered ” in a wrongful death action, ‘ ‘ the clerk must add to the sum so awarded, interest thereupon from the decedent’s death, and include it in the judgment.” It has been held that section 132 of the Decedent Estate Law must be read with sections 130 and 131 and cannot be severed therefrom. {Davenport v. Webb, 11 N Y 2d 392, 395.) The West Virginia death statute makes no provision for such prejudgment interest. In the light of our conclusion as to plaintiff’s proposed conclusion of law numbered six immediately hereinbefore discussed and refused, we have determined that plaintiff is not entitled to such interest. (Davenport v. Webb, supra-, see, also, Pearson v. Northeast Airlines, supra.)
Evidence was offered by defendant that Kathleen N. Biley, widow of the deceased and administratrix above named, had remarried since the death of the deceased. Objection to the admission of this evidence was made by defendant. We believe that we stated at that time that in our opinion such evidence was inadmissible. Counsel for defendant having suggested that he be given an opportunity to brief the question, and his opponent being agreeable to such procedure, and the case being tried before us without a jury, we received the evidence thus offered with the proviso, however, that the attorneys for the *206 parties could argue the question in their respective briefs should they be so advised and with the further proviso that we would discuss and determine the admissibility of such evidence in this memorandum, decision. We are of the opinion that such evidence is inadmissible. Therefore, we have disregarded it and have not considered it in arriving at our determination herein. Lastly, we strike out the same, and we save an exception to the defendant upon our ruling. (Lees v. New York Cons. R. R. Co., 109 Misc. 608, 609-610, affd. 193 App. Div. 882; Murmann v. New York, N. H. & H. R. R. Co., 233 App. Div. 446, revd. on other grounds 258 N. Y. 447; The City of Rome, 48 F. 2d 333, 343; Duffy v. City of New York, 7 AD 2d 988; Matter of Saxe, 21 Misc 2d 811; Matter of Dell’ Acquila v. Chapman, 277 App. Div. 54, affd. 302 N. Y. 713; Radley v. Leray Paper Co., 214 N. Y. 32.) We distinguish on the facts Dibble v. Whipple (281 N. Y. 247); Sider v. General Elec. Co. (238 N. Y. 64), cited by defendant. We now consider the question of damages.
The damages to which plaintiff is entitled are compensatory in nature. The loss as referred to by the West Virginia Code is that “ financial or pecuniary loss sustained by a distributee or distributees of such deceased person” with its offending ceiling or limitation (West Virginia Code of 1955, § 5475; Yeater v. Jennings Oil Co., 75 W. Va. 346, 350), which offending ceiling or limitation, however, is no longer binding upon us (Kilberg v. Northeast Airlines, 9 N Y 2d 34, supra). Under section 132 of the Decedent Estate Law of the State of New York, damages recoverable are such as are deemed to be “ a fair and just compensation for the pecuniary injuries, resulting from the decedent’s death, to the person or persons, for whose benefit the action is brought. ’ ’
Both parties have cited New York cases exclusively in connection with the question of damages. From this we infer that they agree that “ financial or pecuniary loss ” may properly be arrived at under New York law which provides as above quoted ‘ ‘ a fair and just compensation for the pecuniary injuries, resulting from decedent’s death ”. Lastly, in Babcock v. Jackson (12 N Y 2d 473, supra) at page 480, the court says: “ The emphasis in Kilberg was plainly that the merely fortuitous circumstance that the wrong and injury occurred in Massachusetts did not give that State a controlling concern or interest in the amount of the tort recovéry as against the competing interest of New York in providing its residents or users of transportation facilities there originating with full compensation for wrongful death. Although the Kilberg case did not expressly adopt the ‘ center of gravity ’ theory, its weighing of the contacts or inter *207 ests of the respective jurisdictions to determine their bearing on the issue of the extent of the recovery is consistent with that approach.” Thus in arriving at the amount of damages hereinafter set forth we have awarded what we deem to be “ a fair and just compensation for the pecuniary injuries, resulting from the decedent’s death ”.
Under New York and West Virginia death statutes any amount awarded is for the benefit of decedent’s wife and for his three children although as to distribution thereof among the beneficiaries there is a difference between that provided for under the New York statute and that set forth in the West Virginia statute. (Decedent Estate Law, § 133; West Virginia Code of 1955, §§ 5475, 4080, 4089, [1], [b].)
Section 133 of the Decedent Estate Law of the State of New York which provides for distribution of damages recovered in a wrongful death action, at all times herein mentioned, read and now reads as follows: ‘‘ The damages recovered in an action, as prescribed in this article, or obtained through settlement without action, are exclusively for the benefit of the decedent’s husband or wife, and next of kin, except as hereinafter otherwise provided; and, when they are collected, they must be distributed by the plaintiff, or representative, to any or all of such husband or wife and next of kin, in proportion to the pecuniary injuries suffered, the proportions to be determined upon notice to all interested persons in such manner as the court shall deem proper and after a hearing at such time as the court may direct, upon application made by the plaintiff or representative or by the husband or wife or any next of kin. If no action is brought, such determination shall be made by the surrogate of the county wherein letters have been issued. If an action is brought, the said proportions shall be determined by the court having jurisdiction of the action or by the surrogate of the county wherein letters have been issued to the plaintiff”. By virtue of said section where action has been brought, as is the case herein, we have concurrent jurisdiction with the Surrogate of the county wherein letters have been issued to the plaintiff to determine the distribution of the proceeds to the persons therein named in proportion to the pecuniary injuries suffered.
However, we have never exercised our full power unless overriding circumstances have warranted its full exercise, it being deemed that the Surrogate’s Court is peculiarly competent to deal with notices and hearings relative to apportionment and distribution of the proceeds, the appointment, conduct and discharge of special guardians, and requirements of security, if any. (Fried v. Glueck, 16 Misc 2d 423.) It appears that the *208 administratrix herein was appointed on the 28th day of May, 1959, and letters were issued to her by the Surrogate of the County of Monroe, New York, and are now in full force and effect.
It has been held that the proceeds of an action for causing the wrongful death of a decedent are to be distributed in accordance with the law of the jurisdiction where the cause of action arose, in this case in accordance with the laws of the State of West Virginia. (Matter of Williams, 192 Misc. 555; Matter of Pearson, 195 N. Y. S. 2d 589.) However, plaintiff contends that under Babcock v. Jackson (supra) distribution of the recovery is to be made under New York law, that is under section 133 aforesaid, rather than under the law of the State of West Virginia. We have concluded that in view of plaintiff’s contention, overriding circumstances do exist which warrant the exercise of our concurrent jurisdiction to the extent at least of determining the conflict of law question thus posed. Disposing of said issue in this court where other conflict of law questions involved have been resolved makes possible the review of this question together with all other questions at one time should review be desirable.
In the light of our discussion we have concluded that distribution herein of any proceeds, when, if, and as they are paid must be collected and received by the plaintiff administratrix; that distribution thereof must be had in accordance with applicable laws of West Virginia under which the widow and the children are entitled to share in proportions of one third to the widow and the remaining two thirds equally to the three children herein; and that all further proceedings in connection therewith, including proper security requirements, be had in the Surrogate’s Court of the County of Monroe, New York.
The main elements to be considered in arriving at the amount of damages in a wrongful death case are stated in Arnold v. State of New York (163 App. Div. 253, 264-265) as follows: “ The main elements to be considered are the age of the decedent, his health, habits, qualities, expectation of life and expectation in life, earning ability, income, the prospect of increase of income, the number, age, sex, situation and condition of those, dependent on him for support, and his disposition to support them well or otherwise, and the like. Nothing can be allowed for sentiment, for grief or for suffering, even when death was not immediate, but the precise question is what were the probable chances of pecuniary benefit from the continuance in life of the decedent worth under all circumstances 1 (Thomas v. Utica & Black River R. R. Co., 6 Civ. Proc. Rep. 353; 34 Hun *209 626; 98 N. Y. 649.) ” (See, also, Lucivero v. Long Is. R. R. Co., 22 Misc 2d 674; Fajardo v. New York Cent. & H. R. R. R. Co., 84 App. Div. 354; Mix v. Hamburg-American S. S. Co., 85 App. Div. 475; Hinsdale v. New York, N. H. & H. R. R. Co., 81 App. Div. 617.) Such elements are well established in our law, and we do not burden this memorandum by discussing them as generalities at any greater length. We apply them to the case before us.
Decedent at the time of his death was 26.8 years of age. He left him surviving his widow, the administratrix herein, age 26; Sharon Marie Riley, a daughter, age three years; John Walter Riley, a son, age two years; and Elizabeth Ann Riley, a daughter, age nine months. This action, tried before us without a jury by agreement, while brought in the name of the administratrix, was instituted to recover on behalf of the afore-mentioned survivors. His life expectancy was given as 38.12 years and as 44.9 years, depending upon the table of mortality used. The expectancy of life of his wife and of his children is greater.
At the time of his death decedent was employed by the Stromberg-Carlson Division of General Dynamics at Rochester, New York as a sales engineer II and was earning $8,320 a year. Retirement at General Dynamics was at age 65 as of the date of decedent’s death. He is described in the record as an extraordinary worker. He had made rapid advancement in his work, his advancement being much more rapid as compared with that of other employees in the same department. Higher positions in his department available to him for advancement if qualifying were sales engineer I, manager of contract administration, and manager of marketing. There were salary increases open to him in this department of 10% annually until he reached $10,000 per year. It was testified that there was also open to him further annual increases of $1,000 per year following the attainment of the salary of $10,000. However, in our opinion, the testimony of further annual increases of $1,000, continued after the attainment of the $10,000 yearly salary and into the unpredictable future and for the rest of decedent’s years of work to retirement, is not of the same positive probative force as is that of the annual increase up to the $10,000 yearly salary, is too speculative, uncertain and conjectural, and does not furnish a stable and sound basis required for ascertainment of total gross earnings.
Plaintiff offered through computations of an accountant and tax expert computations of decedent’s gross earnings to retirement age assuming the increase in compensation to which reference has hereinbefore been made; also offered computations to *210 reflect the impact of assumed Federal and New York State taxes on such gross earnings and to reflect decedent’s share of common expense; and lastly, the commutation of the resulting figure to date of death value, using a 4% factor. It is urged that said offer reflects the proper elements to be considered and is an accepted way to estimate sums which the decedent in reasonable anticipation might have contributed to his family had he survived. We sustained an objection to such method of proof on the basis of the Hinsdale, Fajardo and Mix cases (supra) and we deem it pertinent at this point to set out the following from Hinsdale v. New York, N. H. & H. R. R. Co. (81 App. Div. 617, 620-621, supra). “ The question for the jury to determine was * # * the pecuniary loss that his widow and mother had sustained in consequence of his death. The uncertain element that must necessarily enter into any computation of such a pecuniary loss has been recognized by the courts in determining the nature of the evidence that is admissible in actions of this character. The statute imposes upon the jury the burden of determining that question, and to assist them in the performance of that duty evidence of the amount that the decedent earned, his habits, the relationship of those dependent upon him, and the view that he has taken of his obligations to those dependent upon him as evidenced by the contributions that he has made for their support and comfort, are proper elements for the jury to consider in determining what they have lost by his death. The language of the statute, however, precludes an attempt to measure this loss upon a mathematical calculation, and we do not think that evidence of the cost of an annuity should be admitted, as it is calculated to distract the attention of the jury from the real duty that is imposed upon them by the statute, and that is to fix what they deem a fair and just compensation for the pecuniary injuries resulting from the decedent’s death.” In arriving at the amount which we have concluded plaintiff is entitled to be awarded, we have taken into consideration the elements of damage discussed herein and in the cases which we have cited and have applied them as warranted by the record. The assessment of damages, difficult in all eases, is especially difficult where death results from an accident. “ It is well recognized that there is no mathematical formula for computing damages in a case of this kind and the inquiry of the jury in this field necessarily requires some degree of speculation ”. (Walther v. News Syndicate Co., 276 App. Div. 169,177.) Attention has been called to prior adjudications of this and of other courts on this question. While they may offer some guide in fixing the amount, each case must stand on its own merits. *211 Amounts awarded in comparable cases do, however, emphasize the fact that the courts of this State and elsewhere have increasingly recognized the greater and greater dollar value of human life. (Lucivero v. Long Is. R. R. Co., 22 Misc 2d 674, supra.)
After due consideration we have come to the conclusion that the sum of $175,000 is a fair and just compensation for the pecuniary injuries resulting from the death of decedent, William H. Riley, to which must be added the sum of $1,475, reasonable funeral expenses, in all the sum of $176,475. No damages have been awarded for conscious pain and suffering and no prejudgment interest is allowed for the reasons hereinbefore expressed.