In the Matter of the Estate of PORTIA R. TABLER, Deceased. DOMINICK J. VISCARDI, as Executor of Portia R. Tabler, Deceased, et al., Respondents; DARLENE T. EICHEN et al., Appellants.

Third Department, December 23, 1976

*Gerald J. Lawson (Myron Komar* of *Donahue, Bohl, Clayton & Komar* of counsel), for appellants.

*James M. Brooks* and *Roland M. Urfirer* for Dominick J. Viscardi, respondent.

*John L. Bell* for American Cancer Society and another, respondents.

MAIN, J. On January 3, 1975 Dominick Viscardi offered for probate an instrument which was allegedly the last will and testament of Portia R. Tabler. Pursuant to the order of the Essex County Surrogate, Viscardi executed service on all unknown distributees by publication. On the return date authorizations of attorney, an affidavit of heirship and objections to probate were filed on behalf of the appellants, who claimed to be the children of the decedent's only child. The court refused to order service of supplemental citations upon appellants, stating: "until it is established that Franklin D. Tabler and Darlene T. Eichen, are in fact distributees of Portia R. Tabler, they have no standing to file objections to the probate of the Will of Portia R. Tabler, deceased".

A hearing scheduled to determine the issue of whether appellants were distributees was adjourned until December 3, 1975. In the meantime the appellants applied to the Supreme Court of Columbia County, by way of a motion for declaratory judgment, for that court's judicial determination of the very issues then pending in the Surrogate's Court of Essex County. Neither of the defendants therein was a party to or had any interest in the probate of Portia R. Tabler's will and, upon their default, appellants obtained a judgment declaring that Darby R. Tabler (decedent's child) and Eleanor C. Tabler had contracted a valid common-law marriage in another jurisdiction, that the appellants were the issue of that marriage and that the marriage was valid in New York at the time the appellants were born. At the December 3rd hearing, after a motion for disqualification of the Surrogate was denied, appellants called one witness, asked the court to take judicial notice of the said Columbia County Supreme Court decision and then rested. After hearing argument, the court refused to take judicial notice and asked appellants if they desired to reopen their case. Appellants declined and, subsequently, the decree appealed from was issued.

The appellants raise several issues, none of which have merit. They contend that, as "[g]randchildren who are the only living relatives of a decedent", they were necessary parties to the probate proceeding. The real issue, however, is not whether grandchildren must be cited, but whether the appellants are grandchildren. The Surrogate correctly determined that he was empowered to decide this question before

issuing a citation as requested by the appellants *(Matter of Cook,* 244 NY 63; *Matter of Oswald,* 24 AD2d 465; *Matter of Fay,* 70 Misc 2d 51, affd 41 AD2d 703). The further argument is advanced that by refusing to issue supplemental process as requested, the Surrogate's Court did not obtain jurisdiction over the appellants. SCPA 203 provides that the Surrogate's Court obtains personal jurisdiction by, among other means, "appearance of an adult competent party in person or by attorney or by pleading" (10 Cox-Arenson-Medina, NY Civ Prac, par 203.04). Both appellants are adults and there is no indication that either is not fully competent. Jurisdiction was thus obtained by the appearance of two attorneys on their behalf, by means of the filing of authorization of attorney forms on the return date of the citation. By the filing of objections to probate, considered pleadings by SCPA 302 (subd 1, par [a]), appellants also appeared by pleading. Finally, appellants received actual notice of the proceeding and were given a full opportunity to litigate their claim.

In a series of arguments which can be condensed to one legal principle, appellants take the position that the Surrogate was bound by the prior Supreme Court judgment declaring them to be the lawful issue of a valid common-law marriage contracted by the decedent's predeceased child. Although appellants discuss the issue in terms of judicial notice and jurisdiction over declaratory judgments, the real contention is not that the Surrogate should have taken notice of the Supreme Court judgment or that the Supreme Court had exclusive jurisdiction, but rather is that he was bound by *res judicata* or collateral estoppel, i.e., "the Surrogate's Court should not now pass upon the issues determined in Supreme Court". Accordingly, we are faced with the question of what effect, if any, must be given to the Supreme Court judgment from Columbia County. The pertinent facts and the sequence of events bear brief recounting.

A proceeding had been commenced and an issue presented in the Surrogate's Court and the matter was adjourned by consent of the parties and their attorneys to a future date primarily for the convenience of the appellants' attorney. Shortly before the date of the scheduled adjourned hearing, appellants' attorney commenced an action for a declaratory judgment in the Supreme Court, Columbia County. The other parties to the Surrogate's proceedings were not parties in that action, nor were they or their attorneys given notice of any

kind. Appellants obtained a default judgment which they then presented to the Essex County Surrogate at the scheduled hearing as conclusive proof of the issue therein.

At the outset it is clear that the doctrines of *res judicata* and collateral estoppel have no application here for it is obvious that essential elements thereof are lacking.

It is true that the Supreme Court and Surrogate's Court have concurrent jurisdiction in matters involving decedents' estates (NY Const, art VI, §§ 7, 12). Since the Supreme Court is a court of general jurisdiction, rather than specialized, and has the power to render declaratory judgments, it might be argued that where doubt is raised as to whether the Surrogate's Court may handle all matters that may come before it in a given case, the Supreme Court should be allowed to rule. However, since it is clear that the Surrogate's Court can determine the validity of a common-law marriage and the legitimacy of the children *(Matter of Fay,* 70 Misc 2d 51, affd 41 AD2d 703, *supra; Matter of Oswald,* 24 AD2d 465, *supra; Matter of Manville,* 58 Misc 2d 881; *Matter of Erlanger,* 136 Misc 784, affd 229 App Div 778), no doubt exists here. Where, as here, the Surrogate's Court has already acted and where all the relief requested may be obtained in the Surrogate's Court, the Supreme Court ordinarily refrains from exercising its concurrent jurisdiction and the court first assuming jurisdiction should retain it to the exclusion of the other *(Dunham v Dunham,* 40 AD2d 912; *Matter of Moody,* 6 AD2d 861).

We, therefore, conclude that the judgment of the Supreme Court, obtained as it was and under the circumstances presented here, must be regarded as without legal significance insofar as the proceedings in the Surrogate's Court of Essex County are concerned. The danger of countenancing the procedure follwed by appellants is clearly evident here, where, if the Supreme Court judgment is given legal effect, even to the extent of being considered prima facie proof of the facts found therein, the appellants will have subverted the rules of procedure in that they will have shifted the burden of proof from themselves to their adversary. Moreover, sanctioning such conduct would result in duplicity of proceedings with the attendant increase in litigation, expense and confusion; would be an open invitation to forum shopping by the bar and would obstruct the orderly administration of justice.

We find no merit to the claim by the appellants that the Surrogate should have disqualified himself. The remote con-

tacts set forth in support of this claim, almost inevitable in any community, totally fail to demonstrate even the slighest hint of potential bias.

The record reveals that a very substantial estate is in issue. Even though the appellants refused to take advantage of the Surrogate's invitation to reopen the case, after they had rested, the interests of justice mandate that the issue be fully litigated before the Surrogate (CPLR 5522).

The order entered January 2, 1976 should be affirmed; the decree entered January 15, 1976 should be reversed, on the law and the facts, and the proceeding should be remitted for further proceedings not inconsistent herewith, with costs to abide the event.

LARKIN, J. (concurring). The majority suggest that the judgment entered by the Supreme Court is "without legal significance", or a nullity, because the plaintiffs in that proceeding had previously submitted to the jurisdiction of the Surrogate's Court by filing objections.

It is readily apparent that no appeal has been taken from the Supreme Court judgment or any order entered in that proceeding. Indeed, the present record establishes that the proponent of the will had full and complete knowledge on December 3, 1975 of the judgment entered in Supreme Court on November 21, 1975 and the briefs do not suggest any effort to open or intervene in that matter since the entry of judgment.

In *Dunham v Dunham* (40 AD2d 912) the Surrogate, in a proceeding decided by him on July 31, 1970, expressly retained or reserved jurisdiction over questions raised in an estate administration proceeding as to the meaning of a contract. Prior to that decision and in January of 1970 there had been a proceeding initiated in Supreme Court which sought a declaratory judgment that the defendant (beneficiary in estate) had to purchase certain stock pursuant to the contract referred to in the Surrogate's proceeding. Upon an appeal from an order of the Supreme Court in the proceeding before it this court exercised its jurisdiction to transfer the matter to Surrogate's Court. It is to be noted that at no point in the *Dunham v Dunham (supra)* decision is it held that the proceedings in Supreme Court were a nullity or that there was any lack of jurisdiction in Supreme Court. The *Dunham* case simply held that where the Surrogate has asserted juris-

diction the Supreme Court should refrain from determining the merits of a similar controversy between the parties and should transfer the action to the Surrogate. There is nothing in *Dunham* which suggests that if a decision and order are obtained in Supreme Court it is a nullity.

In a series of cases involving the estate of Florence M. De Lano we explained the relationship of the Surrogate's Court and Supreme Court. In *Matter of De Lano* (34 AD2d 1031, affd 28 NY2d 587) it was brought out that the Surrogate had referred to the Supreme Court certain issues for trial by a jury. Those issues were tried and after the verdicts (in favor of the will proponents) had been certified to the Surrogate's Court, the Attorney-General moved to intervene on behalf of charitable beneficiaries and for a new trial as to the validity of certain codicils. Supreme Court granted the motion for a new trial including the objectant relatives *de novo.* The relatives could only have succeeded if not only the codicils but the original will could have been set aside. In this appeal of June, 1970 we held that the question of absence of necessary parties was not one which could be considered in Supreme Court. However, as in the *Dunham* case, this court was considering an appeal from the Supreme Court order. The *De Lano* case refers not to the power of Supreme Court as having concurrent jurisdiction but to it as one to which the Surrogate's Court has transferred a trial portion of a proceeding.

In a later *De Lano* case (41 AD2d 880) there was an appeal from an order of the Supreme Court granting summary judgment. In that case it was noted that the prior adjudication of issues while the Attorney-General was not a party was not binding on him. However, it is apparent that the Attorney-General was a necessary party to that proceeding, whereas in our present case the proponents of the will are not necessary parties in the Supreme Court. I find nothing that mandates holding that the Supreme Court judgment is a nullity.

The question then presented is what effect should the Surrogate have given to the Supreme Court judgment. Although as a general rule a judgment is not conclusive on the facts found therein as against a party who has not had a full and fair opportunity to establish his claim *(Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65; 9 Carmody-Wait 2d, NY Prac § 63:197, pp 198-199), there are circumstances under which a judgment may be offered as proof of facts found therein against strangers to the action. In *Grant Bros. v*

*United States* (232 US 647, 663), the court stated that "a judgment in a prior action is admissible, even against a stranger, as *prima facie,* but not conclusive, proof of a fact which may be shown by evidence of general reputation, such as custom, pedigree, race, death and the like, and this because the judgment is usually more persuasive than mere evidence of reputation". This principle is clearly applicable to the question of "pedigree" in issue herein. Even apart from the question of reputation, however, "[t]he rule of *stare decisis,* and something more, requires judicial notice of that prior adjudication. There are cases where the prior adjudication on the same subject is so germane to a later controversy that the court will examine and honor the former adjudication even though the parties be different" *(Newitt v Newitt,* 282 App Div 81, 85. See, also, *Matter of Benedict v Lunn,* 244 NY 373). Accordingly, I conclude that the Surrogate's refusal to take judicial notice of the Supreme Court judgment, and to consider such judgment as prima facie evidence of the facts therein contained was improper.

Although I have concluded that the said Supreme Court judgment should have been given some weight by the Surrogate, I am not of the opinion that the judgment was totally binding. I am particularly compelled to this latter determination because of the manner in which the judgment was obtained. After a proceeding had been commenced and an issue raised in the Surrogate's Court, with the matter scheduled for a hearing, one of the participants then went to the Supreme Court and, without notice to the adversaries in the prior proceeding, obtained a default judgment, apparently for the express purpose of avoiding the authority of the Surrogate. I do not approve of such use of our courts.

I concur in the conclusion of the majority that the interests of justice mandate that the appellants have an opportunity to litigate their claim (CPLR 5522).

HERLIHY, J. (concurring in part and dissenting in part). It is apparent from the majority decision and the concurring decision of Justice LARKIN that the Supreme Court judgment entered in Columbia County was lawfully obtained and duly entered according to law, wherefore it is a valid subsisting judgment and we are all so agreed. That judgment is not simply one which determined a controversy, it is in the same nature as a birth certificate and declares as a public record

that a man and woman were lawfuly married and that the appellants are the legitimate issue of such marriage.

Orderly procedure dictates that if the parties who oppose the declaration of paternity as entered in the records of Columbia County do not want to assume the burden of disproving the accuracy of the judgment as *a public record,* they should request relief from the Supreme Court in Columbia County to the extent of being permitted to intervene and open the default whereupon a trial *de novo* could eventuate. Under the circumstances, there is little doubt that a Supreme Court Justice would reopen the proceedings had in Columbia County (CPLR 5015).

We do not have the jurisdiction in this proceeding over the prior proceedings in Columbia County and any decision rendered herein by the Surrogate will not be such a part of the Columbia County records as to indicate a *new* finding that the appellants are not the legitimate issue of the lawfully married parents as presently set forth in Columbia County records. There can be no doubt but what the Columbia County judgment is binding on the appellants forever and also anyone claiming *through them* regardless of how it was obtained *procedurally.*

I do not disagree with the conclusion that the proceedings should be reopened. However, I do not agree that the reopening is for the purpose of letting the appellants reopen their case as the only proper evidence before the Surrogate was proof of kinship in favor of appellants. The interests of justice require that the respondents be given the opportunity to request relief from the Supreme Court in Columbia County.

KOREMAN, P. J., and GREENBLOTT, J., concur with MAIN, J.; LARKIN, J., concurs in a separate opinion; HERLIHY, J., concurs in part and dissents in part in a separate opinion.

Order entered January 2, 1976 affirmed; decree entered January 15, 1976 reversed, on the law and the facts, and proceeding remitted for further proceedings not inconsistent herewith, with costs to abide the event.