OPINION OF THE COURT
Bertram R Gelfand, J.
This application for letters of administration d. b. n. indicates serious issues that go beyond the limited relief sought in the application. It illustrates that when the best procedures available under the rule of law are ignored, such a course is pursued at the significant risk of denying to parties forever that to which they are entitled.
Decedent died on March 1, 1976. Limited letters of administration were issued to Fulgencio Franco, decedent’s spouse, pursuant to a decree entered March 11, 1976. These letters were for the sole purpose of enabling him to prosecute a cause of action arising from an accident which resulted in the death of decedent. Said letters were specifically limited pursuant to the provisions of SCPA 702 (subd 1). This section provides in the following specific language that limited letters may be issued restricting the powers of the holder thereof: “1. To the enforcement or prosecution of a cause of action in favor of the decedent or his fiduciary under general or special provisions of law, to the defense of any claim or cause of action against a decedent or his fiduciary, and restraining the fiduciary from compromise of the action or the enforcement of a judgment recovered therein until the further order of the *1085 court and the filing of satisfactory security if required.” (Emphasis added.)
The purpose of this statutory provision need not be belabored. It allows the appointment of a fiduciary for the purpose of pursuing litigation without burdening the matter with a bond on an as yet nonexistent corpus while still insuring that if the action does result in a recovery, the fund is protected for the benefit of all who might be entitled to share in it.
In this matter, the original administrator, Fulgencio Franco, died on September 23,1980. Prior to his death, the action instituted by him as administrator seeking to recover damages for the death of the decedent and for personal injuries resulted in a settlement in the Supreme Court for the sum of $50,000. An order of the Supreme Court was entered August 1, 1980 which stated that the administrator was authorized to enter into the aforesaid compromise of the causes of action; that the total settlement was assigned to the claim for wrongful death; the action for conscious pain and suffering was permitted to be discontinued; the restrictions contained in the limited letters issued by this court were purported to be modified to permit him to receive the settlement proceeds; counsel fees were fixed; and the net proceeds directed to be paid by the defendants to “Fulgencio Franco, administrator of the Estate of Francisca Franco, deceased and the sole distributee herein, as and for his distributive share in the proceeds thereof’. The language of this decretal provision may leave some slight room for argument as to whether the administrator is to receive the funds in his fiduciary capacity or personally as “sole distributee”. However, in the absence of any indication that any other party in interest was aware of the settlement or would ever be made aware of it, except for the fortuitous circumstance of the administrator’s death before he could collect the fund, it probably would make little difference from a practical standpoint in what status he collected the fund. There was no legal protection that would insure that anyone except the administrator would even get a chance to claim an interest in the fund, let alone receive such an interest.
*1086 This court takes judicial notice of the file of the Supreme Court. It reflects that the petition upon which the order of August 1, 1980 is based states who the “distributees” of decedent are by a statement that legally is little more than gibberish. This statement reads as follows:
“That the decedent, Francisca Franco, left her surviving the following distributee, whose name, degree of relationship and post office address is as follows:
“Name Relationship Residence
Fulgencio Franco Husband Calle Los Mercedes
(Widower) No. 35 A
Coamo, Puerto Rico
00640
“That other than your petitioner, the decedent herein left her surviving no other distributee nor no other issue, natural or adopted nor issue of any such deceased issue.
“That the decedent, Francisca Franco, left her surviving the following next-of-kin (all of whom were adults at the time of the wrongful death of the decedent herein) and whose names, degree of relationship and post office addresses at that time were as follows:
“Name Relationship Residence
Fulgencio Franco Husband 320 East 176th Street
(12/22/16) (Widower) Bronx, New York
Jorge Franco Son 960 Grand Concourse
(5/11/38) Bronx, New York
Antonio Franco Son 320 East 176th Street
(9/21/47) Bronx, New York
Fulgencio Franco Son 1830 Washington Avenue
(7/18/48) Bronx, New York
Miguel Franco Son 2679 Decatur Avenue
(10/24/52) Bronx, New York
Maria Franco Velasquez Daughter 320 East 176th Street
(6/30/51) Bronx, New York”
There does not appear to be any significance to the petition’s giving two different addresses for the same petitioner at the two places that his name appears. What is significant is that this statement attributes to decedent’s " issue a nondistributee status as “next-of-kin” that is totally divorced from the provisions of the statutes of this State (see EPTL 4-1.1). This presentation not only mis *1087 states the status of decedent’s issue, but appears to erroneously presuppose that merely because they are adults they have no pecuniary interest in the settlement. There are numerous conceivable circumstances under which an adult child would sustain a pecuniary loss as a result of the death of a parent and on which contention the child would be entitled to his day in court (Gross v Abraham, 306 NY 525; Matter of Washington, 16 Misc 2d 577; see, also, Matter of Singleton, 96 Misc 2d 169, 171; Matter of Mairowitz, 90 Misc 2d 854, 857). The same unique distinction between “distributees” and “next-of-kin” is repeated in the affidavit of the very experienced attorney filed with the petition in the Supreme Court.
The petition before the Suprme Court also contains the following statement: “That the petitioner consents to the discontinuance of the cause of action herein for the conscious pain and suffering sustained by the decedent herein, Francisca Franco, with prejudice.”
The same petition indicates that the decedent survived in the hospital for at least three days after the accident. The allocation of the total recovery to the claim for wrongful death is clearly prejudicial to the interests of decedent’s distributees, other than the administrator, as well as to the interests of possible creditors who could reach so much of the recovery as was allocated to conscious pain and suffering, but from whose claims the wrongful death recovery is immune. It is also significant that the file of the Supreme Court does not reflect either notice to any of decedent’s issue of the proceeding that led to the order of August 1, 1980 or their consent to the relief granted therein.
The Legislature of this State has enacted a detailed and painstaking statutory procedure for the administration of the affairs of decedents. They are designed to economically and expeditiously notify and protect all possible parties in interest, including creditors and assignees (see SCPA 304, subd 3; 306, subd 1, par [b]; art 18; EPTL 13-2.2, 13-2.3). Within the framework of these procedures are carefully designed provisions for a fiduciary to account for the proceeds of a compromise of actions arising from the death of a decedent (see SCPA 2204; EPTL 11-3.3). It should be noted that when the sum at issue is a lump-sum settlement and *1088 there has been no separate verdict as to causes of action for conscious pain and suffering, and causes of action for wrongful death, SCPA 2204 does not become applicable until after the threshold issue of the allocation of the settlement between personal injuries and wrongful death has been appropriately determined. Such a determination requires that parties who may be adversely affected by the division, including the State Tax Commission, be given the opportunity to be heard before their rights are settled. This does not in any way impinge upon the exclusive jurisdiction over the litigation of the negligence action that rests in the trial court where the negligence case is pending.
The negligence action and the accounting for a recovery not only involve different issues, but also different parties. When all of the applicable law is read in conjunction, the pieces of the puzzle clearly show the distinction between the fiduciary of a decedent settling before a trial court an action based in negligence and accounting for the recovery in the appropriate Surrogate’s Court. The parties to the negligence action are the fiduciary and the defendants who it is alleged are guilty of the negligence that resulted in the loss at issue. The parties to the accounting in the Surrogate’s Court are the fiduciary and all other parties having an interest in the estate including all alleged distributees, claimants, and possible assignees of distributees. The settlement of a negligence action is within the jurisdiction of the trial court in the Federal or State jurisdiction where the negligence action is being prosecuted (EPTL 5-4.6; Matter of Holquin, 101 Misc 2d 174, 178). This trial court is not necessarily located in the county where the administration of decedent’s estate is pending, or even in the same State.
The New York State Constitution confers general criminal and civil jurisdiction on the Supreme Court that gives to it concurrent jurisdiction with the Surrogate’s Court in the administration of estates (see NY Const, art VI, § 7). Likewise, the same provision gives to the Supreme Court concurrent jurisdiction over every other proceeding routinely handled in specialized courts. However, the clear implication of the existence of these specialized courts is that the Supreme Court be relieved of the burdens of the *1089 matters within their particular purviews. Within the perimeters of this principle, it has been clearly recognized that the orderly administration of justice that is necessary in order to protect parties in interest requires that once a Surrogate’s Court undertakes the administration of an estate, all further proceedings with reference to that administration be before the court that originally assumed jurisdiction (Matter of Tabler, 55 AD2d 207; Dunham v Dunham, 40 AD2d 912; Matter of Moody, 6 AD2d 861).
The present provisions of EPTL 5-4.4 (subd [a], par [1]), when read in isolation, muddy the waters. This section gives concurrent jurisdiction to the trial court of a negligence action to handle an “application” to distribute the proceeds of a negligence action pending before it. However, it should be primarily noted that under no circumstance is there anything in this section which authorizes any court to proceed without an appropriate proceeding. EPTL 5-4.4 (subd [a], par [1]) specifically requires: “Such damages shall be distributed by the personal representative to the persons entitled thereto in proportion to the pecuniary injuries suffered by them, such proportions to be determined after a hearing, on application of the personal representative or any distributee, at such time and on notice to all interested persons in such manner as the court may direct.” (Emphasis added.)
Fundamental due process requires that the rights of parties interested in estates should not be recklessly submerged to conclude a negligence action in camera divorced from the balance of the administration of an estate. Despite the statutory indication of concurrent jurisdiction set forth in EPTL 5-4.4 (subd [a], par [1]), just as in the areas of Family Court matters, summary proceedings, and countless other matters within the general jurisdiction of the Supreme Court and the specialized jurisdiction of courts with staffs specifically geared to handle such matters, it is well established that the preferred practice is that when a plaintiff is acting under limited letters, the trial court should not exercise its powers to distribute the proceeds and should limit its function to approving the settlement (see Amo v Leonard, 262 App Div 467; Riley v Capital Airlines, 42 Misc 2d 194; Fried v Glueck, 16 Misc 2d 423; *1090 9A Rohan, NY Civ Prac, par 5-4.4 [2] [b]). In recognition of these principles the appellate courts have directed the Supreme Court to refrain from exercising its jurisdiction relative to the affairs of a decedent if a Surrogate’s Court has entertained jurisdiction over an estate (Matter of Tabler, supra; Dunham v Dunham, supra; Matter of Moody, supra). The Supreme Court itself has noted that the Surrogate’s Court is peculiarly competent to deal with these issues (Riley v Capital Airlines, supra, pp 207-208).
Only by a sensitivity to the aforesaid can the spectre be avoided of a trial court ordering the actual distribution of a recovery without requiring the fiduciary to post a bond, and an interested party who did not receive notice, being left with a legal remedy which has been rendered meaningless because the fiduciary has dissipated the funds and has no other assets to pay any judgment that might be obtained against him. By such a procedure the wronged distributee does not even have a basis for checking the status of the matter if he has not been made privy to where the fiduciary was prosecuting the negligence case. A search of the usual source of information about the affairs of a decedent, the Surrogate’s Court files, would be fruitless.
It should be emphasized that the issue is not merely whether distribution of possible assets should be concluded in the Supreme Court or Surrogate’s Court of the same county. As indicated, death actions are not necessarily prosecuted in the jurisdiction of decedent’s domicile. To abandon the caution expressed by the Appellate Division, and the State Supreme Court itself, as to leaving estate accounting matters to the Surrogate’s Court, is to encourage what are the equivalent of estate accounting in any of the countless courts where death actions may be prosecuted in this State, other States, and the Federal system. This would certainly open the door to facilitating the concealment from interested parties of the status of matters in which they have a significant interest.
It should also be noted that in the instant matter, it is doubtful that counsel would have submitted the gibberish as to who are decedent’s “distributees” as contrasted to his “next-of-kin”, to a court whose staff regularly deals with *1091 problems of distribution or that an order would have been entered without the record reflecting any documentation as to proper notice to parties in interest. The instant case presents a classic example of the grave prejudice to parties in interest when a trial court in a negligence action is induced to circumvent a proper accounting by a fiduciary who has been granted only limited powers by the Surrogate’s Court. In this matter, without any indication of proper notice or consent from the adversely affected distributees, but for the administrator’s death, the total recovery would have been placed in the hands of the administrator who claimed a right to personally retain the total recovery.
The potential for prejudicial mischief from such a course is immense. No bond is posted nor is any safeguard provided which would require him to ever account to the other distributees. Neither distributees nor creditors are given their day in court. The other distributees cannot advance their contentions as to pecuniary loss or the obvious claim that the allocation by the administrator of the total recovery to wrongful death constitutes an unjustified, self-serving decision by the administrator to favor himself as against other distributees (see EPTL 5-4.4,11-3.3, subd [b], par [1]). Creditors can neither assert their claims nor protest the allocation that is prejudicial to the collection of their claims. The Department of Social Services is thwarted in the monitoring of estate files as part of its efforts to recover so much of the billions in taxpayers’ dollars that it expends, as it is entitled, and required by law, to recover when public assistance recipients acquire assets. By the trial court in the negligence action placing the distribution in the hands of the administrator without the Surrogate’s Court file indicating the modification that sanctioned such collection, creditors searching the Surrogate’s Court file would find nothing except an indication that any possible causes of action were still pending, were unresolved or had been abandoned.
It is clear that the language of the restraining part of the decree awarding the limited letters of administration authorized by SCPA 702 (subd 1) did not permit the administrator to collect the settlement unless he filed a bond in a *1092 sufficient amount, if warranted, before taking into his hands the proceeds of the compromise or any judgment (see Amo v Leonard, 262 App Div 467, supra; Matter of Finkelstein, 1 Misc 2d 1067, affd 6 AD2d 1055). It is equally clear that once a court of record has rendered a decree it should only be modified by the court that rendered the decree or an appellate court (see 4A Warren’s Heaton, Surrogates’ Courts, § 362, subd 4, par [c]; 2A Warren’s Heaton, Surrogates’ Courts, § 159, subd 7, par [i]; 9A Rohan, NY Civ Prac, par 5-4.4 [2] [b]).
In the instant case, the administrator died prior to actually receiving the proceeds. Fortunately, no apparent harm was done by his having incorrectly represented to the Supreme Court that he as the decedent’s spouse was her sole distributee and his having failed to give notice of the application to any of decedent’s five children, as well as to any possible creditors. Accordingly, the instant application now being accompanied by duly acknowledged renunciations and consents of those parties having equal rights to letters, to the issuance of letters to petitioner, letters of administration d.b.n. shall issue to petitioner in place and stead of Fulgencio Franco upon his duly qualifying according to law and filing a surety bond in the penal sum of $31,000. This sum represents the net sum available for distribution after deducting the counsel fees and disbursements fixed and allowed in the order of the Supreme Court, entered August 1, 1980. Of course, had all issues of collection and distribution been initially presented to the Surrogate’s Court in the usual manner, there would have been no collection without an appropriate order for direct distribution and the need for a bond would not be present.
In view of the foregoing, on the court’s own motion, petitioner is directed to file his account and seek judicial settlement thereof within 30 days of the issuance to him of letters of administration d. b. n. or, alternatively, within the same period, petitioner may file receipts and releases from all the interested parties and an appropriate affidavit as to no creditors who would be adversely affected by the total proceeds being allocated to wrongful death.
The court wants to re-emphasize that nothing stated herein is intended to impugn the wisdom and necessity for *1093 the statutory scheme under which the approval of the amount of a settlement is within the jurisdiction of the trial court in the negligence matter. It is hoped that within this framework, trial courts will equally recognize the necessity and appropriateness for estate accountings to be concluded in the Surrogate’s Court where the estate administration commences and remains pending.